## Kerr's Appeal.

1. In the Reformed Presbyterian Church, the powers of the General Synod are derived from and contained in the church standards, and the exercise by it of an authority opposed to or subversive of such standard is *ultra vires* and cannot of right demand the respect and obedience of its subordinates.

2. A decree of said General Synod, after reciting that certain members of the Second Congregation of Philadelphia, whose names appeared in a paper presented to the Synod, had denied the authority and jurisdiction of the so-called Philadelphia Presbytery, and desired to maintain relations with, and be in submission to the General Synod, and had asked the counsel and advice of that body, it was therefore resolved that the members of said Second Congregation, whose names appeared on said paper, together with others who might unite with them " be and are hereby declared to be the Second Congregation of Philadelphia, and as such entitled to all the rights and immunities pertaining thereto." The petition to the Synod was by a minority of the congregation. There had been no charge of offence or legal investigation and no notice was given to the congregation or trustees. *Held*, that the resolution of the *Synod* was *ultra vires* and ineffectual to dispose of the charter and property of the Second Congregation.

3. The decree of a church judicatory is binding only where it is affirmatively shown that it has acted within the scope of its authority, and has observed its own organic forms and rules.

4. If the Presbytery of Philadelphia was disobedient or refractory the General Synod could have dissolved it, and attached its churches to some other Presbytery ; or if any of its members were contumacious it could have tried them in regular form and expelled them ; but where there was nothing in the conduct of the Presbytery or its members, previously to the exscinding resolution of the Synod which put the Second Church beyond the legislation or disciplinary power of that judicatory, it had no authority without notice or trial to forfeit its corporate franchises and the Synodical decree was of no effect.

February 10th 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal of Alexander Kerr and others from the decree of the Court of Common Pleas, No. 4, of *Philadelphia county :* Of January Term 1876, No. 131.    In equity.

This was a bill in equity filed by John Neely, Joseph McKendrick and Alexander Kerr, elders, and James A. McLaughlin, Alexander Colville, James Colville, Alex. McGarry, Henry McNeill, Alexander Kerr and Robert J. Neely, trustees of " The Second Reformed Presbyterian Congregation," in the county of Philadelphia, district of Spring Garden, plaintiffs, against William Sterrett, John Kemps, Thomas Carrick, Edward Y. Reid, Samuel D. Jordan, William J. McBride, Andrew Fleming, James Caldwell and William Caldwell, defendants.

The following is an abstract of the proceedings:

The bill alleges that the plaintiffs sue in their own behalf, as well as in behalf of The Second Reformed Presbyterian Congregation, in the county of Philadelphia, district of Spring Garden, and those members of the congregation who with plaintiffs " adhere to the charter of said corporation, and who maintain the system of religious

principles declared and exhibited by the Reformed Presbyterian Synod of North America," and are in subordination to the authority and acknowledge the jurisdiction of the General Synod of said church.

That said Second Reformed Presbyterian Congregation is a corporation duly organized under the Act of Assembly of Pennsylvania, approved April 6th 1791. A copy of the charter is annexed to the bill, and certain provisions thereof are set forth in the body of the bill, inter alia:

2. "That the subscribers and such others being citizens of this Commonwealth as shall hereafter become members of the said congregation, and who adhere to and maintain the system of religious principles declared and exhibited by the Reformed Presbyterian Synod of North America shall be a corporation," &c.

4. That the "Board of Trustees shall consist of seven members, who shall be recognised by the Session of this congregation as being in full communion with the church."

5. That the annual election for trustees shall be "on the first Monday of every year, of which notice shall be given two weeks previous from the pulpit. The election shall be by ballot, in the church."

That said corporation is the owner of valuable property, including a lot of ground with the church building thereon erected, on the west side of Twenty-second street, in the late district of Spring Garden, now Fifteenth Ward in the city of Philadelphia.

That said Second Reformed Presbyterian Congregation is "a constituent part of the religious association known as 'The Reformed Presbyterian Church in North America,' and that said association is governed by the body known as 'The General Synod of the Reformed Presbyterian Church in North America,' and by Presbyteries constituted by said Synod, and subordinate thereto, and that said Synod (which is the body mentioned in article 2 of the charter) is the highest authority, and also the supreme judicatory of said association, having appellate jurisdiction in all cases, and original jurisdiction in such cases as it sees fit to assume over the members of said association, and to the authority of which Synod, every person, as a condition of becoming a member of said association, vows subordination."

That said Second Reformed Presbyterian Congregation was attached to and formed part of the Reformed Presbytery of Philadelphia, by some called the First Reformed Presbytery of Philadelphia.

That June 12th 1868, said Presbytery, consisting of sundry ministers and ruling elders named, including Rev. Dr. William Sterrett, one of the defendants, and Ruling Elder Alexander Kerr, one of the plaintiffs, met at the First Reformed Presbyterian Church, Philadelphia, and passed a series of resolutions (Alexander

[Kerr's Appeal.]

Kerr alone dissenting and objecting thereto), " in violation of all order and discipline of the church, and in violation of the vows taken by the ministers and elders of said Presbytery, ' which required that they should submit to the authority of the Synod of . the Reformed Presbyterian Church in North America, and promise subjection to the superior judicatories of this church,' " and " then suspended their relations and seceded from the control of the said Synod of the Reformed Presbyterian Church in North America, to which they were bound to be in subordination, and to which they owed *obedience* and allegiance as aforesaid."

That at said meeting of Presbytery, the Second Reformed Presbyterian Church was represented by said Rev. Dr. Sterrett, " as ministerial member," and by said Alexander Kerr, " as ruling elder;" that said Rev. Dr. Sterrett approved of said resolutions, but Mr. Kerr voted against them, his dissent being entered at his request on the records of Presbytery; that the action of Dr. Sterrett and the resolutions of Presbytery were affirmed and ratified by the defendants and by the congregation of the Second Reformed Presbyterian Church, worshipping in the church building on Twenty-second street, but were disapproved of by the majority of Session (of plaintiffs herein), who sustained Mr. Kerr and approved of his action at Presbytery.

That since June 12th 1868, said Presbytery has sent no delegate to the General Synod of said Reformed Presbyterian Church in North America, " has taken no steps towards resuming its connection therewith, nor in any way acknowledged its ' subordination' thereto, but on the contrary, has denied its authority, and acted in every way independently of it."

That the annual meeting of said General Synod was held at Cedarville, Ohio, in May 1869, at which meeting a petition (set out verbatim in the bill), and purporting to be from " members of the Second Reformed Congregation of Philadelphia," was presented and referred to a special committee; the petitioners representing that they had " declined to recognise the authority and jurisdiction of the Reformed Presbytery of Philadelphia, by reason of their action," at the meeting of June 12th 1868, " in suspending relations to General Synod;" that they desired to maintain their " relations and be in subordination to the Supreme Judicatory in the Lord," and asking the " counsel and advice" of Synod, and appointing Alexander Colville (one of the plaintiffs), as their commissioner to present the petition to Synod; the petition purports to be signed by all the plaintiffs (except Alexander and James Colville) and by fifty-one others; that the special committee presented a report embodying a preamble and resolutions (set forth in extenso in the bill), which was adopted; the substance of the resolutions being that petitioners with others—officers and members of the congregation—who might unite with them, were declared to be " The

Second Reformed Presbyterian Congregation of Philadelphia," and directed to place themselves under the care of the Presbytery then represented in Synod by Rev. Drs. Crawford, Steele and others; and that said Presbytery, known as the Second Reformed Presbytery, be thenceforward designated as the Reformed Presbytery of Philadelphia.

That plaintiffs and the other signers of said petition, with other officers and members of said congregation, December 7th 1869, presented a petition (set forth verbatim-in the bill) to the said Reformed Presbytery of Philadelphia, for admission under their care, as directed by General Synod. This petition purports to be signed by all the plaintiffs and fifty-five others; that Presbytery granted the petition, appointed Dr. Crawford to moderate in the Session, and invited Mr. Kerr to a seat in Presbytery.

That plaintiffs have since maintained their organization and connection with said Presbytery and General Synod, and are recognised by said Presbytery and Synod as "The Second Reformed Presbyterian Congregation in due subordination to the Synod of the Reformed Presbyterian Church in North America, and as adhering to and maintaining the religious principles declared and exhibited by said Synod."

That in accordance with the charter due notice of the annual elections for a board of trustees for said congregation to serve for the years 1870, 1871 and 1872 "were given from the pulpit of the church in which said congregation worshipped, and the annual elections regularly and legally held" on the first Mondays of 1870, 1871 and 1872; that in consequence of defendants holding possesion of the church building on Twenty-second street, and refusing to give plaintiffs possession of the same, said annual elections for trustees were held in Milton Hall, Coates street, where the congregation has been worshipping; and that at the election on first Monday of 1872 the plaintiffs named as trustees were duly elected trustees of said congregation for 1872, and have been duly recognised by the Session in accordance with the charter, as "being in full communion with the church."

That defendants have voluntarily withdrawn from the Reformed Presbyterian Church in North America, and the jurisdiction of its Synod, and do not "adhere to or maintain the religious principles declared and exhibited" by said Synod; as evidence of which the bill alleges that the defendants have broken a fundamental law of the church, "in this that said Synod did, June 5th 1843, declare and exhibit as a part of its religious principles to which every member of the church and of the Board of Trustees must subscribe, certain terms of Ecclesiastical Communion, Article VI. of which terms (Book of Discipline, p. 32), is in the following words: 'A practical adorning of the doctrine of God our Saviour by a life and conversation becoming the Gospel, together with due subordination

[Kerr's Appeal.]

in the Lord to the authority of the Synod of the Reformed Presbyterian Church in North America:' " and the defendants "refuse all subordination to said Synod," and openly declare their independence of it, and by resolution of their Presbytery of June 12th 1868, ratified and approved by them, "decline to recognise or submit to its action."

That by reason of the premises, defendants and those associated with them have ceased to be members of said Second Reformed Presbyterian Congregation.

That defendants have obtained and hold possession of the church building on Twenty-second street, with the furniture and other property of said Second Reformed Congregation, and refuse to deliver the same "to the duly elected trustees of said congregation."

That defendant Sterrett unlawfully exercises the functions of minister in said church building, and defendants Kemps and Carrick unlawfully exercise the functions of elders therein, whereby plaintiffs are prevented from worshipping therein, "and the said buildings are diverted from their proper uses."

That defendants will, unless restrained by the court, appropriate the property of said Second Reformed Presbyterian Congregation in their possession to the use of a religious body which does not "adhere to and maintain the system of religious principles declared and exhibited by the Reformed Presbyterian Synod of North America," referring for evidence thereof to the facts set forth in the bill.

Prayers of the bill. That defendants may answer: That plaintiffs, with the congregation worshipping with them, be declared to be the Second Reformed Presbyterian Congregation in the county of Philadelphia, district of Spring Garden.

That defendant Sterrett be enjoined from exercising the functions of minister in said church building.

And defendants Kemps and Carrick from exercising the functions of elders therein.

And the other defendants (and including also Carrick), be restrained from exercising the functions of trustees of said congregation, and from using the alleged seal of the corporation, or issuing any promissory notes or certificates of indebtedness thereof, or creating any lien, mortgage or encumbrance upon the real estate, or in any wise dealing or interfering with the property of the corporation.

That defendants deliver the property of said congregation in their possession to the plaintiffs named as trustees, or their successors.

General relief.

The answer admits the incorporation alleged in the bill, and that the charter is correctly set forth in the copy annexed thereto; that the corporation is owner of valuable property, including the real estate described in the bill; that the Second Reformed Congrega-

tion always has been and still is a constituent part of the Reformed Presbyterian Church in North America, and was attached to and was part of the Reformed Presbytery of Philadelphia, by some called the First Reformed Presbytery of Philadelphia; that the Reformed Presbytery of Philadelphia met June 12th 1868, as alleged; that Dr. Sterrett approved of the resolutions then adopted, and that Mr. Kerr represented the congregation therein and voted against the resolution, and his dissent was entered on the records of Presbytery; that since June 12th 1868, said Presbytery has sent no delegate to General Synod; that said General Synod met at Cedarville, Ohio, in May 1869, and that the petition was presented and action had thereon as alleged; that the plaintiffs named as trustees were elected by plaintiffs and their adherents, at Milton Hall; that Synod did declare and exhibit as a part of its religious principles, the terms of Ecclesiastical Communion, the 6th article of which is set forth in the bill.

The answer further admits qualifiedly as follows :—

That the Reformed Presbyterian Church in North America is "under the laws and constitutions set forth in the books and documents referred to in the first paragraph of the answer, governed by the General Synod of said church, by Presbyteries 'duly' subordinate thereto, and by Sessions of congregations." That said Synod is the "chief legislative" authority, and also the supreme judicature of the denomination. That persons as a condition of becoming members of said denomination, owe "due subordination in the Lord to the authority of said Synod." That defendants (except Dr. Sterrett and Kemps) have "as the lawfully elected trustees of the said corporation," possession of the church building and other corporate property, and that they refuse to deliver the same to such of the plaintiffs "as wrongfully claim to be trustees" thereof.

The answer denies :

That the General Synod has appellate jurisdiction in all cases, or that it has original jurisdiction in such cases as it sees fit to assume in it over members of said denomination, or that it has any power or jurisdiction other than is expressly conferred upon it by the laws and constitutions above referred to.

That the Reformed Presbytery of Philadelphia did at the meeting convened June 12th 1868, or at any other time, pass any resolution or resolutions in violation of the order and discipline of the church, or of the vows taken by the ministers and elders of said Presbytery, or which were of the tenor and effect stated in the bill; and that the ministers and elders of said Presbytery have ever taken vows which required that they should submit to the authority of the Synod of the Reformed Presbyterian Church in North America, or have ever promised, or agreed to promise "subjection to the superior judicatories of this church," or were ever bound to be in subordination, or owed obedience and allegiance to the Synod in the

[Kerr's Appeal.]

manner and to the extent alleged in the bill. That the Session has ever expressed its approval or disapproval of the resolutions adopted by Presbytery, June 12th 1868.

That defendants have any knowledge of the facts alleged as to the petition by plaintiffs and others to Presbytery, December 9th 1869.

. That plaintiffs have under the direction of the General Synod been duly received under the care of the Reformed Presbytery of Philadelphia, have thence hitherto maintained their organization and their connection with said Presbytery and General Synod, and are recognised by said Presbytery and Synod as the Second Reformed Presbyterian Congregation, in due subordination to the Synod of the Reformed Presbyterian Church in North America, and as adhering to and maintaining the religious principles declared and exhibited by said Synod.

That the persons named in the bill are trustees of said congregation, duly elected on the first Monday of 1872, and that plaintiffs and their adherents constitute " The Second Reformed Presbyterian Congregation in the county of Philadelphia, district of Spring Garden."

That the "so-called election," held at Milton Hall, confers on the persons thereby chosen, any title to the office of trustees of said corporation, because :

   Notice was not given from the pulpit of the church in Twenty-second street.

   Said alleged election was not held in said church.

   The electors were not then members of the corporation.

   The persons alleged to have been elected thereat, have not been, and are not recognised by the Session as being in full communion with the church ; and were not then, and are not members of the corporation.

That plaintiffs, or their adherents, or any one for them, ever demanded possession of said church building for the purpose of holding an election therein.

That defendants have withdrawn from the Reformed Presbyterian Church in North America, and from the jurisdiction of said Synod.

That defendants and those associated with them, have ceased to be members of " The Second Reformed Presbyterian Congregation."

That defendant, Dr. Sterrett, unlawfully exercises the functions of pastor of said congregation ; and that defendants, Kemps and Carrick, unlawfully exercise the functions of elders within said church building.

That plaintiffs, or any of them, save by their own voluntary secession, have ever been prevented from worshipping or attending corporate meetings in said church buildings ; or that said buildings are, or have ever been diverted from their proper uses.

. [Kerr's Appeal.]

That plaintiffs are officers or members of said corporation, or have any right of property in said church buildings.

That defendants intend to, or will appropriate the property of said congregation to the use of a religious body which does not adhere to and maintain the system of religious principles declared and exhibited by the Reformed Presbyterian Synod in North America.

The answer distinctly avers:

That "The Second Reformed Presbyterian Congregation in the county of Philadelphia, district of Spring Garden," was organized about 1836 as a constituent part of the Reformed Presbyterian Church in North America, whose system of religious principles and the respective powers and jurisdiction of whose several judicatories are set forth in sundry books named, and which are referred to and made part of the answer.

That the only vows or promises taken or made by the ministers or elders of the Reformed Presbytery of Philadelphia were in their subscription to the "Terms of Communion" adopted in 1807 by the Reformed Presbytery of North America (then the supreme judicatory of the denomination), and in their ordination vows (prescribed at the same time); by the former they bound themselves to "*due* subordination in the Lord to the authority of the Synod," and by the latter they promised "subjection * * * to the superior judicatories of this church in the Lord."

That the General Synod at Pittsburgh, in May 1868, took certain action, particularly set forth in exhibit A of the answer, in view of which "the Reformed Presbytery of Philadelphia," with which the Second Reformed Presbyterian Congregation has from its organization been, and still is connected, on June 12th 1868, adopted the preambles and resolutions, a copy of which is annexed to the answer.

That May 17th 1869, said Presbytery adopted a memorial and resolutions, a copy of which is also annexed to the answer, and which with accompanying papers, a commissioner appointed by Presbytery, delivered to the General Synod, then in session at Cedarville, Ohio, May 20th 1869, and Synod after the reception of the memorial, &c., made the enactment set forth in the bill.

That Rev. Dr. Sterrett's right to membership in Presbytery was dependent solely upon his status as a minister, and that the congregation was "represented" in Presbytery, as are all congregations in the Reformed Presbyterian Church, only by its delegate from its ruling elders.

That the congregational approval of the resolutions of Presbytery of June 12th 1868, was expressed by the adoption at a special meeting, held April 22d 1869, after due notice of the preamble and resolution set forth verbatim in the bill; and that plaintiffs were present at that meeting, and no one of them voted against the preamble and resolution; and that until some time in October

1869, plaintiffs continued to attend the religious services of the congregation and participated in all its corporate acts.

That General Synod at Cedarville, Ohio, May 20th 1869, wrongfully declared the officers and members of said Presbytery to be without the jurisdiction of said Synod, and thereby prevented Presbytery from thereafter sending delegates to Synod.

That said Presbytery has always acknowledged its due subordination to Synod, never denied the rightful authority thereof, and never acted independently thereof, except in so far as the law of the church required it so to act.

That no one of defendants was served with any process requiring him or them to appear before said Synod, or was otherwise notified that Synod would hear or determine any case, suit, appeal or complaint concerning said congregation, or its corporate property, or the rights and interests of defendants as members of said corporation.

That on or about November 1st 1869, plaintiffs and their adherents voluntarily and causelessly seceded from said corporation, leaving defendants and their adherents in possession of the church building and property; and that from said date plaintiffs and their adherents have maintained an independent congregational organization.

That General Synod has sought wrongfully to thrust the defendants out from the Reformed Presbyterian Church in North America, and from the jurisdiction of said Synod; and that defendants do adhere to and maintain the system of religious principles declared and exhibited by the Reformed Presbyterian Synod of North America.

That defendants have never refused, and do not refuse " due subordination in the Lord" to the authority of said Synod, and that they do comply, and always have complied with all the terms of ecclesiastical communion, the sixth article of which is set forth in the bill.

That defendants (except Rev. Dr. Sterrett and Kemps) were at a meeting convened after due notice in the church building, on first Monday of 1872, by the ballots of the members of said corporation, in due form of law elected trustees thereof, and that they have been and are recognised by the Session of said congregation as being in full communion with the church.

That Dr. Sterrett was ordained and installed pastor of said congregation April 7th 1848, and that since then he has been sole pastor thereof; that his pastoral relation has never been dissolved; that he has never been suspended or deposed from the ministry of the Reformed Presbyterian Church, and that no ecclesiastical judicatory has ever severed the connection existing between him and said congregation.

That defendants Kemps and Carrick having been duly ordained

as ruling elders of the Reformed Presbyterian Church, were duly installed as ruling elders of said congregation, and have never resigned or been deposed from their offices.

The answer submits and charges:

That the promises and vows taken or made by the ministers or elders of said Presbytery bind to subordination and subjection, only to such acts and decrees of the ecclesiastical judicatories of the denomination as may be lawfully enacted by those judicatories, under the powers granted to them by the "system of religious principles," as set forth in the books and documents referred to in the answer.

That the action of General Synod in May 1868, was *ultra vires*, and illegal.

That the action of Presbytery as set forth in the preambles, resolutions, memorials, &c., of June 12th 1868 and May 17th 1869, was not a secession of said Presbytery from the Reformed Presbyterian Church in North America, and was not intended and did not operate to place Presbytery or any of its members, or any congregation under its care, out of the pale of said denomination; that their action was not contrary to the laws of the denomination, or in violation of the vows taken by the members of said Presbytery.

That the Synodical decree of May 1869, is void for want of jurisdiction, and for want of notice to the parties sought to be affected thereby.

That the separate congregational action of plaintiffs and their adherents, has the effect of estopping plaintiffs from asserting any right or interest in, or title to, the property of said congregation.

That under the law of the denomination, the pastoral relation cannot be dissolved, without the consent of both pastor and congregation, except by the death of the pastor, or his suspension or deposition from the ministry.

The case was referred to an examiner to take testimony, and upon the coming in of his report the case was referred to Samuel C. Perkins, Esq., as master, who, after an able and exhaustive review of the history of the controversy, and the questions of law involved in the same, came to the following conclusions:

That the government of the Reformed Presbyterian Church is not as alleged in the plaintiffs' bill; but is, as stated in the answer, composed "under the laws and constitutions set forth in the books and documents referred to in the first paragraph of the answer— of the General Synod—Presbyteries duly subordinate thereto—and of sessions of congregations:

That Synod is the chief legislative authority, and the supreme, that is, the highest judicatory of the church; but that it has not original jurisdiction in such cases as it sees fit to assume over

[Kerr's Appeal.]

members of the denomination; as such jurisdiction is not conferred upon it by the constitution, rules and regulations of the church:

That the resolutions of the [First] Reformed Presbytery of Philadelphia, passed at its meeting, June 12th 1868, while perhaps not wholly unexceptionable in language and terms, yet were not in violation of all order and discipline of the church, nor were they in violation of the vows taken by the ministers and elders who voted for the same:

That had such action been as alleged in plaintiffs' bill, Synod did not proceed in respect thereto in accordance with the forms, as prescribed by the standards, nor in a manner consonant with justice and right:

That the action of Synod, in respect to the Second Reformed Presbyterian Congregation, through the Synodical Commission, was *ultra vires* and void as without jurisdiction:

That the trust, or confidence, or purpose, for or upon which the corporate property and franchises of the Second Reformed Presbyterian Congregation are held, do not imply as a condition absolute obedience, subordination and subjection to the Reformed Presbyterian Synod of North America:

That the defendants and the majority of the Second Reformed Presbyterian Congregation, in their action in the premises, have exercised a right expressly reserved to them under the constitution of the church; and that they do "adhere to and maintain the system of religious principles declared and exhibited by the Reformed Presbyterian Synod of North America:"

That the defendants and a majority of the Second Reformed Presbyterian Congregation have not seceded from the Reformed Presbyterian Church, nor declared themselves independent, nor united with any other sect or denomination:

That the action of the congregational meeting of April 22d 1869, was in accordance with the rights and privileges conferred by the charter, and that the plaintiffs, and those who united with them, not being satisfied with such action, and having withdrawn from the association on that account, are not entitled to claim the corporate franchises and property, or any part or share therein:

That the defendant Sterrett has never been suspended or deposed from the ministry of the Reformed Presbyterian Church, nor dismissed from the pastorate of the Second Reformed Presbyterian Congregation; and that defendants Carrick and Kemps have not been suspended or deposed from the office of the eldership, nor ceased to be elders of said congregation:

That the defendants Carrick, Reid, Jordan, McBride, Flemming and William and James Caldwell, were the lawfully elected trustees of said Second Reformed Presbyterian Congregation:

That the allegations of the plaintiffs' bill, on which they ground their application for relief, are not sustained:

And that the plaintiffs' bill should be dismissed with costs.

Exceptions were filed to this report by appellants, which the court below dismissed and confirmed the report, and hence this appeal.

*J. Sergeant Price*, and *F. Carroll Brewster*, for appellants.—Whenever a church or religious society has been originally endowed in connection with or in subordination to, some ecclesiastical organization or form of church government, it can no more become independent than it can renounce its faith or doctrine and adopt others: Roshi's Appeal, 19 P. F. Smith 462; Schnoor's Appeal, 17 Id. 138.

Form of church government, order and discipline, are a part of the religious principles of the Reformed Presbyterian Church of North America. Its Synod has "declared and exhibited" them as applicable to this particular case. The defendants refuse to "adhere to and maintain" them as so declared, and are consequently incapacitated for membership in the corporation by the terms of the charter. Charters are only intended to create legal persons, and to define their powers and duties; the trusts for which such persons hold property donated to them are ascertained and enforced exactly as in the case of natural persons: App v. Lutheran Congregation, 6 Barr 201; Sutter v. Trustees, 6 Wright 503; Winebrenner v. Colder, 7 Id. 244; Skilton v. Webster, Bright. Rep. 239; Den v. Bolton, 7 Halstead (N. J.) 206.

The title of the church property of a divided congregation is in that part of it which is acting in harmony with its own law; and the ecclesiastical laws, usages, customs and principles which were accepted among them before the dispute began are the standards for determining which party is right. Roshi's Appeal and other cases cited above.

The plaintiffs are, and the defendants were not acting in harmony with the laws, usages and principles which were accepted by the congregation before the dispute began. The title to the church property is therefore in the plaintiffs.

Where a religious organization is governed by a body which is its chief legislative and supreme judicial authority, the act of that body as to the ecclesiastical status of a subordinate body in the organization is final, and will not be inquired into by civil courts: Commonwealth v. Green, 4 Whart. 531, 603; Henderson v. Hunter, 9 P. F. Smith 335; Watson v. Jones, 13 Wallace 679; Harrison et al. v. Hoyle et al., Leg. Gaz., Dec. 18th 1874.

The Synod is the supreme tribunal of the ecclesiastical organization in connection with, and subordination to which, this congregation was originally endowed. It has decided that the body to which the defendants have attached themselves do not, and the body to which the plaintiffs belong do, adhere to and maintain the system of reli-

gious principles of that organization. The civil tribunals will accept that decision of the ecclesiastical status of the parties as conclusive, and will decree their civil rights accordingly.

Where adherence to a system of principles declared and exhibited by a certain body is made by the charter the test of membership in a corporation, and that body has declared and exhibited what principles are applicable in the particular case or a similar one, such declaration becomes the law of the case.

The course of practice for over half a century, agreeing with and interpreting the standards, proves most conclusively that the Synod is self-existing; that Presbyteries are created, changed and abolished by it at its pleasure; that it deals directly and of its own motion, and as it sees fit with presbyteries, congregations, individuals and classes of men, and is the sole judge of ecclesiastical status of all inferior bodies or "judicatories" of the church.

Here, the proof is clear and strong that the defendants, by their congregational acts have ratified and supported the rebellion of the Presbytery, in denial of the authority of the Synod, against the law and order of the church, and contrary to the system of religious principles declared and exhibited by the Synod of the Reformed Presbyterian Church in the Book of Discipline.

Having thus refused to adhere to and maintain the system of religious principles enjoined upon them as members, by the charter of incorporation, they have no right to carry the church property with them, a property dedicated by the charter to the maintenance of Reformed Presbyterian religious principles as declared and exhibited by the Synod.

*C. Stuart Patterson* and *William A. Porter*, for appellees.—The appellants must show that the property in question is held by the appellees upon a trust, whose terms the appellees have violated: Craigdallie *v.* Aikman, 1 Dow. P. C. 1; Same *v.* Aikman, 2 Blight 529; Same *v.* Aikman, 6 Patton's App. 526; Attorney-General *v.* Pearson, 3 Meriv. 353; Attorney-General ex. rel. Mander *v.* Pearson, 7 Sim. 290; Attorney-General *v.* Shore, 7 Id. 310; Shore *v.* Wilson, 9 Cl. & Fin. 355; Dill *v.* Watson, 2 Jones (Irish Ex.) 48; Craigie *v.* Marshall, 12 Dunlop 523, cited in Innes on Creeds 375; Presbyterian Congregation *v.* Johnston, 1 W. & S. 9; Means *v.* The Church, 3 Id. 303; App *v.* Lutheran Congregation, 6 Barr 201; Trustees *v.* Sturgeon, 9 Id. 321; McGinnis *v.* Watson, 5 Wright 9; Sutter *v.* The Trustees, 6 Id. 503; Winebrenner *v.* Colder, 7 Id. 244; Trustees *v.* Lutheran Church, 12 Id. 20; Schnorr's Appeal, 17 P. F. Smith 138; Roshi's Appeal, 19 Id. 462.

The trust requires adherence to and maintenance of the doctrines of the Reformed Presbyterian Church, and forbids passive obedience to the Synod. Where the trust, as here, does not, in

express terms, require connection with any judicatory, it is not a breach of trust for the congregation to sever its connection with the judicatory, with which it has been heretofore connected, "provided there be in such change no radical departure from the original faith or doctrine:" Craigie *v.* Marshall, 12 Dunlop 523 ; Presbyterian Congregation *v.* Johnston, 1 W. & S. 9 ; Trustees *v.* Lutheran Church, 12 Wright 20 ; Schnorr's Appeal, 17 P. F. Smith 138, 147 ; Farreira *v.* Vasconcellos, 27 Ill. 237.

The action of Presbytery on 12th June 1868, and the congregational approval of it, expressed by the meeting of the 22d April 1869, do not constitute a breach of trust. If the action of Presbytery and the congregational approval thereof, were contempt for the "established order of the church," or "an open act of insubordination," or "a refusal to yield due subordination," the members of the Presbytery and of the congregation, severally, rendered themselves liable to trial before and by the church tribunal having jurisdiction, and proceeding in the exercise of that jurisdiction according to the law of the church ; but they did not render themselves liable to be turned out of the church without hearing or trial. The Presbyterial action must be construed by this court, and the Synodical construction if it is not binding on the court.

The decree of a church judicatory is only binding upon civil courts when it has been affirmatively shown that the judicatory has "acted within the scope of its authority, has observed such forms as the rules require, if any forms be prescribed, and if not, has proceeded in a manner consonant with the principles of justice :" Doctor and Student, Add., cap. viii. ; Reeves's History (Dublin ed. 1787), vol. 1, p. 63 ; vol. 2, pp. 78, 215, 379 ; vol. 3, p. 257 ; vol. 4, pp. 3, 45, 205, 398 ; 1 Bl. Com., Introd. 3 ; Introd. to Brod. & Frem. Eccl. Cas ; Stat. 24 Hen. VIII., c. 19 ; 25 Id., c. 19 ; Innes on Creeds 208, 209 ; 1 Hallam's Const. Hist. 195 ; Gorham *v.* Exeter, 69 E. C. L. 66 ; Dunbar *v.* Skinner, 21 Jur. 322 ; Mc-Millan *v.* Free Church, 23 Dunlop 1314 (cited in Innes on Creeds 256-7, 285, 287-8-9, 290-1-2) ; 2 Burn's Eccl. Law, tit. *Deprivation* ; Rex *v.* Gaskin, 8 Term 209 ; In re Bp. of Natal, 3 Moo. P. C. 115 ; Long *v.* Bp. of Capetown, 3 Moo. (N. S.) 44 ; s. c. Brod. & Frem. 293 ; Natal *v.* Gladstone, L. R. 3 Eq. 1 ; Murray *v.* Burgess, L. R. 1 P. C. 362 ; Forbes *v.* Eden, L. R. 1 Sc. & Div. 568 ; Murdock *v.* Phillips Acad., 7 Pick 303 ; Same *v.* Same, 12 Id. 244 ; Thompson *v.* The Society, 7 Id. 160 ; Farreira *v.* Vasconcellos, 27 Ill. 237 ; Den *v.* Bolton, 7 Halst. 206 ; Watson *v.* Avery, 2 Bush 332 ; Wilson *v.* The Ch., 2 Rich. Eq. 192 ; Hoffman's Eccl. Law 276-7 ; Walker *v.* Wainwright, 16 Barb. (S. C.) 486 ; Judge Redfield's note, 9 Am. L. Reg. 220 ; Id., 10 Id. 308 ; Mr. Fuller's note, Id. 313 ; McMillan *v.* Birch, 1 Binn. 178 ; Green *v.* Society, 1 S. & R. 254 ; Riddle *v.* Stevens, 2 Id. 537 ; St. Mary's Church case, 7 Id. 517, 562 ; Commonwealth *v.* Green, 4 Whart.

531, 601; Presbyterian Cong. *v.* Johnston, 1 W. & S. 9; Church *v.* Commonwealth, 3 Barr 282; Batterson *v.* Thompson, 8 Phila. 251.

The same rule is applied to non-religious voluntary societies: Commonwealth *v.* Philanthropic Society, 5 Binn. 486; Commonwealth *v.* Pike Society, 8 W. & S. 250; Society *v.* Vandyke, 2 Whart. 309; Franklin Association *v.* Commonwealth, 10 Barr 357; Binn's case, 2 Binn. 441; Evans *v.* The Club, 14 Wright 107; Potter *v.* Search & Semple, 7 Phila. 443; Thomas *v.* Ellmaker, 1 Pars. 98; Leech *v.* Harris, 2 Brewst. 572; Lowry *v.* Stotzer, 3 Id. 452.

The action of the commission is void for want of jurisdiction, and for want of service of process on the appellees.

Mr. Justice GORDON delivered the opinion of the court, May 7th 1879.

Much of the discussion involved in this case was considered and disposed of in the case of McAuly's Appeal, 27 P. F. Smith 397, indeed the present controversy presents little or nothing that may not be found in that case, and we therefore refer to it as part of our opinion in order to avoid a tedious repetition of what is therein contained. We may say further, *in limine*, if we are to take as true the findings of the master, and we know no reason why we may not do so, the decree of the court below must be sustained on the ground that the action of the Synod in the premises was revolutionary, contrary to the fundamental laws of the church, and subversive of the principles upon which the corporate trust in controversy was founded. As we endeavored to show, in the case above named, not only were the congregations and individuals composing them bound by the ancient rules, regulations and standards of the Reformed Presbyterian Church of North America, but the General Synod also. That its power was derived from and contained in the church standards, and that the exercise of an authority opposed to or subversive of such standards was *ultra vires*, and could not of right demand the respect or obedience of its subordinates.

We, however, pass this and confine ourselves to the single question of the regularity of the Synodical decree dissolving the Second Congregation and forfeiting the corporate franchises of the trustees and members thereof. That decree or resolution was promulgated by the General Synod on the 25th day of May 1869, and is as follows: After reciting that certain members of the Second Congregation, whose names appeared in a paper presented to the Synod, had declined the authority and jurisdiction of the so-called Philadelphia Presbytery, and desired to maintain relations with and be in subordination to the General Synod, and had asked counsel and advice of that body in the premises; it was thereupon resolved,

"that the members of the Second Reformed Presbyterian Congregation of Philadelphia, whose names appear in their paper aforesaid, together with others, officers and members of said congregation, who may unite with them, be and are hereby declared to be the Second Reformed Presbyterian Congregation of Philadelphia, and as such entitled to all the rights and immunities pertaining thereto."

Thus, upon the bare petition of a minority of this congregation, without a pretence of legal examination, without notice to the congregation or its trustees, and without so much as a charge of offence, the rights, franchises and property of the Second Church are transferred to McKendrick and his associates, the petitioners of the Synod. This has more the character of an imperial edict than of a decree of a judicial tribunal, and it cannot be supported by a Pennsylvania court. However absolute the power of the General Synod may be in matters pertaining to the mere ecclesiastical polity of the church, it has not the power thus to dispose of a Pennsylvania corporation or the rights of a Pennsylvania citizen. No longer ago than November last, in the case of Kopp et al. *v.* The Minister et al. of the St. Marks Evangelical Lutheran Church of Butler, we sustained the action of the court below in granting a mandamus to restore the plaintiffs to their corporate rights as members of that church. This was on the ground that the congregation had not adhered to its own organic laws in the trial and expulsion of these men. No doubt they were guilty of the offence charged; no doubt their conduct towards the church and its officers was disrespectful and contumacious; but no matter, they were not properly tried, and they must be restored, if but for the purpose of trial. This was, indeed, but a reiteration of that principle, so well known to our jurisprudence, that the decree of a church judicatory is binding only when it is affirmatively shown that it has acted within the scope of its authority and has observed its own organic forms and rules. But the decree under consideration is not only open to the objection that it is not in accord with the well-known law of the church, that no one shall be condemned without due process, but is also open to the charge that it is opposed to the cardinal principles of natural justice as being a judicial sentence without notice or hearing: GIBSON, C. J., in Commonwealth *v.* Green, 4 Whart. 601.

As a judicial decree, therefore, the synodical resolution was *ultra vires* and ineffectual to dispose of the charter and property of the Second Reformed Congregation.

But, it is alleged, the defendants had, previously, through the action of the congregational meeting of April 22d 1869, withdrawn from the jurisdiction of the Synod, and had, in this manner, forfeited their rights as beneficiaries under the trust, and hence, the action of the Synod was of force as indicating the status of the parties with reference to the Reformed Church. If the fact be as stated, the conclusion is correct. If the defendants, by their own act, cut

[Kerr's Appeal.]

themselves off from the church, they cannot now be heard to complain of the *ex parte* proceedings of the Synod, for, in that case, it did but legislate for those who remained within its jurisdiction.

What, then, was the character of the congregational action of April 22d 1869 ? In the first place, that meeting refused the resolution introduced by Alexander Kerr, declining the authority and jurisdiction of the Reformed Presbytery of Philadelphia, with which the second church was connected; and, in the second place, it adopted the following preamble and resolution, to wit: "Whereas, the Reformed Presbytery of Philadelphia has declared that it remains in the Reformed Presbyterian Church, maintaining her organization and endeavoring to develop and apply her principles in their proper application to the age and country in which we live: Therefore, Resolved, that, for the present, this congregation adheres to said Presbytery, and that we approve of our pastor's course in voting against the suspension of George H. Stewart, at the last meeting of General Synod." Now we confess our inability to see anything in these which indicates a secession from the Synod or church, but rather the contrary. It must be remembered, that this congregational deliverance preceded the session of the General Synod at Cedarville, hence, no action had, as yet, been taken by that body, upon the Presbyterial protest, neither could the congregation know what the action of the Synod would be, and it had no right to determine in advance, between its ecclesiastical superiors. It was, therefore, not only prudent, but strictly in accord with the standards of the church, for this congregation to adhere, "for the present," to its immediate superior, for, by the law of the Synod itself, to the Presbytery it owed direct allegiance, and from that allegiance it could only be released by the act of the Synod. Not only so, but the preamble gives as a reason for this adherence to the Presbytery, the declaration of the Presbytery, that it remained in the Reformed Presbyterian Church. It is thus clear, that there is nothing in the congregational proceedings, from which an intent to withdraw from the jurisdiction of the Synod can be inferred, neither do they indicate even a disrespectful disposition towards that body. There was, then, nothing, previously to the exscinding resolution of the Synod, which put the second church beyond the legislative or disciplinary power of that judicatory, and if the Presbytery of Philadelphia was disobedient or refractory, the General Synod could have dissolved it and attached its churches to some other Presbytery. So, if any of the members thereof were contumacious, it could have tried them in regular form, and have expelled them. Had either of these constitutional methods been pursued, the questions now involved in this, and other cases of the same kind, would have been settled before they reached the civil courts, and this wrangle about the church property would not have been heard of.

8 NORRIS—8

[Kerr's Appeal.]

As matters now stand, it is vain to urge upon us that these defendants did in fact intend to withdraw from the jurisdiction of the General Synod, and that their adherence to the organization of the Reformed Presbyterian Church was but a pretence; for, if even the probability of all this is admitted, there is no proof before us which resolves this probability into a certainty, and we cannot found our decrees upon mere probabilities. This question might have been resolved by the General Synod; it might have unmasked the pretence, if pretence it was; but we must take the case as it stands upon the facts, and those facts are with the defendants. They are in the same position as were the plaintiffs in Kopp et al. *v.* The Church; they have been convicted without trial, but, unlike the plaintiffs in that case, they cannot, for the purpose of trial, be restored to their former status. The act of the Synod has excluded them for ever from its jurisdiction. We can only determine that that act shall strip them of no civil right, but we cannot restore the disrupted organization of the Reformed Presbyterian Church of North America. So far as the ecclesiastical polity of that church is concerned, the General Synod is supreme, and if it has refused to recognise or associate with the second or any other congregation, that is the end of the matter; we cannot revise its proceedings. All that we can say concerning the contest now before us, is that there has been nothing shown why the defendants should forfeit their corporate franchises; as to these, the decree of the General Synod is of no effect.

The decree of the court below is affirmed, and it is ordered that the appellants pay the costs.

SHARSWOOD, C. J., and TRUNKEY, J., dissented.