Jeremiah Bose, H. C. Laudenbacher, Julius Smith, Levi Womer and M. P. Prutzman, as Trustees of the Salem Church of Tamaqua, *v.* Isaac Christ, John Reinhart, Jesse Templin, Levi Stegmeier and Henry Schock.

*Church law—Church property—Divided congregation.*

Where the congregation of a church is divided, the title to the property is in the part, though a minority, which is in harmony with the laws, usages and customs accepted by the body before the division, and which adheres to the regular organization.

*Church law—Adverse possession—Evangelical Association.*

An owner of land conveyed a lot to a Baptist congregation for church purposes.   Subsequently the Baptist congregation relinquished all claim

to the lot to an Evangelical congregation, afterwards incorporated.  At
the suggestion and advice of the landowner's agent, the Evangelical con-
gregation procured a quitclaim deed from the Baptist congregation, erected
a building on the lot and remained in open, notorious, exclusive and ad-
verse possession of the lot for over thirty years, when a division took place
in the Evangelical Association of North America, of which this congre-
gation was a part.  Two conferences were held by said association, one
known as the Indianapolis conference, and the other as the Philadelphia
conference.  The adherents of the Philadelphia conference in this con-
gregation, who composed the majority, excluded their opponents from
the use of the church.  After the case of Krecker v. Shirey, 163 Pa. 534,
decided that the Indianapolis conference was the legal body, the adherents
of the Philadelphia conference obtained a quitclaim deed from the orig-
inal owner of the land.  Subsequently the adherents of the Indianapolis
conference brought an ejectment suit against the adherents of the Phila-
delphia conference in possession of the church.  *Held*, that the plaintiffs
represented the legal Evangelical congregation, and as that body had been
in adverse possession for over thirty years, the plaintiffs were entitled to
recover.

Argued Feb. 15, 1899.  Appeal, No. 388, Jan. T., 1898, by
defendants, from judgment of C. P. Schuylkill Co., Nov. T.,
1894, No. 250, on verdict for plaintiffs.  Before STERRETT, C. J.,
GREEN, McCOLLUM, MITCHELL and FELL, JJ.  Affirmed.

Ejectment for a lot of land in the borough of Tamaqua.
Before SAVIDGE, P. J., of the 8th judicial district, specially
presiding.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiffs.

*Error assigned* among others was in giving binding instruc-
tions for plaintiffs.

*Wesley K. Woodbury* and *A. W. Schalck*, for appellants.—The
plaintiff in ejectment must recover on the strength of his own
title, and not on the weakness of his adversary's : Eldon v. Doe,
6 Blackf. Rep. 341 ; Huddleston v. Garrott, 3 Humph. 629 ;
Colston v. M'Kay, 1 Marsh. (Ky.) 250 ; Covert v. Irwin, 3
S. & R. 283 ; Lane v. Reynard, 2 S. & R. 65 ; Kennedy v.
Skeer, 3 W. 95 ; Miller v. Holman, 1 Grant, 245 ; Youst v.
Martin, 3 S. & R. 428 ; Meals v. Brandon, 16 Pa. 220 ; Wig-
gins v. Hunt, 6 Kulp, 375 ; Welker v. Coulter, 1 Addison,

390; Bonaffon v. Peters, 134 Pa. 183; Heffner v. Betz, 32 Pa. 376.

The forfeiture clause of the deed from the navigation company to the Baptist church reverted title to the company: Henderson v. Hunter, 59 Pa. 335.

While the general principle of law is that in private associations the majority cannot bind the minority except by special agreement, yet the principle is equally general that where the power is of a public nature, the majority shall govern, because it is for the public good, and the power is to be more favorably expounded than when it is for private purposes: Atty.-General v. Davy, 2 Atk. 212; Withnell v. Gartham, 6 Term Rep. 388; Livingston v. Lynch, 4 Johns. Ch. Rep. 573; Sutter v. Trustees of the First Ref. Dutch Church, 42 Pa. 503; Presbyterian Congregation v. Johnston, 1 W. & S. 9; Schnorr's App., 67 Pa. 146; McAuley's App., 77 Pa. 397; United Zions Congregation v. German Ev. Prot. Church, 5 Luzerne Leg. Reg. 450; Aitken's Est., 158 Pa. 541.

*John W. Ryon* and *E. B. Esher,* with them *J. O. Ulrich,* for appellees.—The Salem church was originally organized as a church or congregation of the Evangelical Association of North America, subject to its discipline, laws and usages, and without any interruption had continued in such relation and connection without division until March, 1891; by its charter obtained in 1867, said church emphasized its connection with the Evangelical Association and by the terms thereof was indissolubly connected with said denomination, and only such members as adhered to said Evangelical Association could be members of said Salem church or exercise any office or function therein: Sutter v. Trustees of the First Ref. Dutch Church, 42 Pa. 503; Krecker v. Shirey, 163 Pa. 534; McAuley's App., 77 Pa. 397; Schlichter v. Keiter, 156 Pa. 119; Ehrenfeld's App., 101 Pa. 186; Fernstler v. Seibert, 114 Pa. 196; Jones v. Wadsworth, 4 W. N. C. 514; Macon v. Sheppard, 2 Humph. 335; Den v. Bolton, 7 Halst. 214; Brooke v. Shacklett, 13 Gratt. 320.

The Salem church of Tamaqua thus organized had, through its trustees, under color of right, entered upon the possession of the premises in controversy, as the owner thereof, in March, 1861, and had from that time on been in the open, notorious,

visible, continuous and adverse possession, as a united church or congregation, without any division until March, 1891; by reason of such possession for thirty years, a positive title resulted, under which recovery in ejectment for possession can be maintained: Fredericks v. Huber, 180 Pa. 572; Woods v. Lane, 2 S. & R. 53; Lane v. Reynard, 2 S. & R. 66; McKelvey v. Truby, 4 W. & S. 323; Carr v. Wallace, 7 Watts, 400; Com. v. Moltz, 10 Pa. 527; Ludlam's Est., 13 Pa. 192; Patterson v. Lytle, 1 Jones, 53; Beaupland v. McKeen, 28 Pa. 131; Handley v. Barrett, 176 Pa. 246.

Under the decision in Krecker v. Shirey, 163 Pa. 534, that portion of the Salem church or congregation which adhered to the Indianapolis general conference constituted the true church, was the successors, in temporal and ecclesiastical rights, of the original undivided body, and, as such, was entitled to the use and possession of this property. The plaintiffs, being the trustees of that portion of the membership, and representing them, are entitled to the actual possession of the property, as such trustees, for the use of such membership: Jones v. Wadsworth, 11 Phila. 227.

Plaintiffs in this suit are the ones entitled to recover possession: Fernstler v. Siebert, 114 Pa. 202; Wanner v. Emanuel's Church, 174 Pa. 466.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 6, 1899:

It appears by the record, as properly amended in the court below, that this action of ejectment was brought by the plaintiffs, as trustees of the Salem church of Tamaqua, to recover possession of the property described in the writ, which property, according to the uncontradicted evidence, had been in the continuous, exclusive and peaceable possession of said church and congregation for about thirty years prior to 1891. About that time, a division occurred in the Evangelical Association of North America, of which said congregation theretofore was and ever since has been a member and loyal adherent. That division resulted in the virtual exclusion of the plaintiff congregation from their long continued and peaceable possession and enjoyment of said property, by those of their number who had recently ignored and repudiated the ecclesiastical authority of said Evangelical Association, and are now represented by the defendants.

The Salem church or congregation at Tamaqua, or, as it was originally called, the Evangelical church of Tamaqua, was organized about the year 1856, by ministers of the Evangelical Association, from among certain members of that religious denomination then residing at Tamaqua.  Two or three years thereafter, the then trustees of said newly organized congregation leased the property in controversy from the First Baptist church of Tamaqua, to whom the lot had been conveyed in 1855, for church purposes, by the Little Schuylkill Navigation, Railroad and Coal Company.  Under that lease the lot and chapel erected on the rear end thereof by the Baptists was used and occupied by the plaintiff congregation as its place of stated religious services and congregational meetings.  On March 11, 1861, while the congregation was thus in possession of the property, the trustees of the Baptist church, for the consideration of $600, transferred all their right, title and interest in the same to said congregation, who, in 1865, at a cost of over $5,000, erected on said property a new and commodious two-story church edifice, which upon its completion was publicly dedicated by a minister of the Evangelical Association as a church thereof, in accordance with the prescribed ceremonies of that denomination.  Over the main entrance to the church edifice the name " Evangelical Church " was then inscribed in large letters.  The location of the church was in the central part of Tamaqua on one of its most public streets.  As a church of said association, the edifice thus erected and dedicated continued, as theretofore, to be uninterruptedly and exclusively used and enjoyed by said plaintiff congregation down to the time of the division in said Evangelical Association in 1891.

In December, 1867, the plaintiff congregation, theretofore unincorporated, obtained from the court of common pleas of Schuylkill county a charter of incorporation, which contains, inter alia, the following declaration and provisions : " This church acknowledges itself to be a member of and to belong to the Evangelical Association of North America, and as such it accedes to and recognizes and adopts the constitution, rules, discipline and worship of the Evangelical Association of North America, and acknowledges its authority accordingly.  Any member of this church or corporation who shall disclaim or refuse conformity to said authority shall cease to be a member

of this corporation and shall not be elected or vote in the election for trustees or exercise any office or function connected with said church or corporation."

In article 5 of said charter, it is further provided that the trustees shall make such rules and regulations for the good government of said corporation as are "not repugnant to the rules and the discipline of the Evangelical Association."

Article 6 provides that "no person shall be a minister of this church or congregation but the pastor or minister sent or elected by the conference of said Evangelical Association in North America."

The uncontradicted evidence is that from March 11, 1861, when the First Baptist church relinquished all claim to the property in controversy (if any they had), until March, 1891, when the division in the East Pennsylvania Conference of the Evangelical Association occurred, the plaintiff congregation had the open, notorious, exclusive and adverse possession of the property in controversy. The fact of their possession, as well as the nature and character of the same, was known to the Little Schuylkill Navigation, Railroad and Coal Company. That company's agent at Tamaqua had actual knowledge of all the facts. It was he who advised the plaintiff congregation to procure the quitclaim deed from the Baptist church. In view of the undisputed facts and circumstances connected with the possession of the property in controversy, the officers of said company must be presumed to have had notice of the nature and character of the same. During the entire period of about thirty years prior to the division in 1891, the plaintiff congregation's possession was never interfered with in any manner, nor was its right of possession denied or questioned in the mean time by the Little Schuylkill Navigation, Railroad and Coal Company, or any one else.

In view of the foregoing and other undisputed facts relating to the nature, character and duration of plaintiff congregation's possession, the learned judge who specially presided at the trial was satisfied that the plaintiffs were entitled to recover, and after briefly reviewing the evidence he directed the jury to render a verdict in their favor for the land described in the writ, with six cents damages and costs. The verdict was accordingly rendered and judgment entered thereon. The controlling ques-

tion in this case is whether the learned judge erred in thus directing a verdict in favor of the plaintiffs. A careful consideration of all the evidence has led us to the conclusion that he did not.

The division above referred to in the East Pennsylvania conference of the Evangelical Association of North America occurred in March, 1891, and extended more or less to individuals and congregations within the jurisdiction of that conference, including the plaintiff congregation. The history of that division and the legal consequences resulting therefrom are so fully presented in the opinion of this Court by our late Brother WILLIAMS in Krecker v. Shirey, 163 Pa. 534, that extended reference thereto is unnecessary. Some of the members of the plaintiff congregation, as the same was constituted before and at the time of said division, adhered to what was known as the Bowman conference, but the majority, including many of those represented by the defendants, adhered to the Dubbs conference ; and when in October, 1891, the two rival general conferences met, the one at Indianapolis and the other at Philadelphia, the adherents of the Bowman conference recognized the legality of the Indianapolis body, while the other faction, now represented by the defendants, adhered to the conference that met at Philadelphia. This latter body was subsequently declared by this Court, in Krecker v. Shirey, supra, to be illegal and unauthorized. After that decision was announced in 1894, those, represented by the defendants in this case, who had theretofore adhered to the Philadelphia conference, by resolution declared themselves independent, and thus openly repudiated the authority of the Evangelical Association of North America. Prior to that, however, in 1891, when the division in plaintiff congregation occurred, the same party, now represented by the defendants, refused to permit the minority of the congregation adhering to the Bowman conference to use or occupy the church with their pastor who had been regularly appointed at that conference, and continued to use the church themselves under the pastorate of the rival preacher who had been sent by the Dubbs conference. The plaintiff congregation was thus illegally and forcibly excluded from the church property, to the possession and enjoyment of which they were justly and legally entitled. The effect of the verdict and judgment

thereon in the court below will be to rightly and justly restore them to the possession and enjoyment of the said property from which they were wrongfully excluded by the defendants and those they represent.

Applying the principles recognized and enforced in Krecker v. Shirey and earlier cases there cited, to the undisputed facts relating to the division in plaintiff congregation, and the action of those represented by the defendants in connection therewith, it is very evident that the learned trial judge was warranted in directing the jury to find in favor of the plaintiffs. In that case, this Court, speaking of the action of the body with which the defendants identified themselves, characterized it as " an open revolt," the result of which " has been a divided body, and, what is more to be regretted, divided local congregations, creating discord, litigation and personal bitterness." It was there held, inter alia, that those who, like the plaintiffs, adhered to the Indianapolis conference, constituted the true Evangelical Association, while, on the other hand, those who adhered to the hostile body that met in Philadelphia were, " by their own acts, put on the outside of the ecclesiastical organization, and must remain there until they recognize once more the authority of the body from which they have separated; " that " the title to the church property of a congregation that is divided is in that part of the congregation that is in harmony with its own laws, usages and customs, as accepted by the body before the division took place, and who adhered to the regular organization," and that " it does not matter that a majority of any given congregation or annual conference is with those who dissent. The power of the majority, as well as that of the minority, is bound by the discipline, and so are all the tribunals of the church from the lowest to the highest." It was also held, as had often been done before, that " the laws of an ecclesiastical body will be recognized and enforced by the civil courts when not in conflict with the constitution and laws of the state. A sufficient reason for this is that they have been made or assented to by the parties who have agreed with each other, by the act of uniting with the body, to be governed by its laws and usages."

It follows from what has been said that the plaintiffs and those they represent, by virtue of their ecclesiastical connection with, and their constant loyal adherence to, the Evangelical

Association of North America, were and always continued to be the true Evangelical church and congregation of Tamaqua, which was incorporated as aforesaid by the court of common pleas of Schuylkill county in 1867, and as such are legally entitled to the possession of the property in controversy, as against the defendants and all others who by acts of disloyalty to said Evangelical Association of North America severed their ecclesiastical connection therewith, and thenceforth ceased to be members of the plaintiff congregation.

It is no sufficient answer for the defendants to say that in 1894, for a nominal consideration, they obtained a quitclaim deed from the Little Schuylkill Navigation, Railroad and Coal Company for the property in controversy. In the absence of evidence, which the plaintiffs were not permitted to introduce for the purpose of showing the facts and circumstances connected with the making and delivery of the quitclaim deed, we express no opinion as to its legal effect, further than to say that in the face of the undisputed evidence as to the conduct of the defendants, and the open, adverse, continuous and peaceable possession of the property by the plaintiff congregation, etc., for over thirty years, the quitclaim deed is unavailable as a defense. It is a significant fact that in the body of that instrument it is declared that it "shall not be construed to either affirm or deny the validity of the title of the Little Schuylkill Navigation, Railroad and Coal Company to said premises or any part thereof."

The view we have taken of this case renders it unnecessary for us to notice in detail either of the thirty-eight specifications of error. Neither of them is sustained.

Judgment affirmed.