# Schnorr's Appeal.

1. Property vested in a religious society, incorporated or not, is a charitable use, whether the donors be one or many.

2. The society are trustees and cannot divert the property from the use to which it was dedicated more than other trustees.

3. If they undertake to divert the fund, equity will raise another trustee to administer it according to the intention of the donor or subscribers.

4. When the founders have expressed their intention that particular doctrines shall be taught or a particular form of worship and government maintained, those having the management of the institution cannot alter the purpose for which it was founded.

5. A church organized and endowed as belonging to any particular sect, or in subordination to any particular form of church government, cannot break from that connection or government.

6. If the church be not described in the original donation or subscription as under any particular ecclesiastical jurisdiction it may change its relation, provided there be no radical departure from the original faith or doctrine.

7. In churches, those who adhere and submit to the regular order of the church, though a minority, are the true congregation.

8. The title to the property of a divided congregation is in that part which is acting in harmony with its own law, and the ecclesiastical laws, usages, &c., which were accepted before the dispute are the standard to determine which is right.

9. The guaranty of religious freedom has nothing to do with the property.

10. The majority of a congregation organized under a particular ecclesiastical jurisdiction, resolved that they would not continue under that jurisdiction, elected church officers as an independent body and took possession

of the church property. They afterwards rescinded their resolutions and resolved to return; this did not restore them to their former church relations or to any rights in the property.

11. McGinnis *v.* Watson, 5 Wright 9, Sutter *v.* Reformed Dutch Church, 6 Id. 503, remarked on.

November 19th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Butler county*: In equity, No. 208, to October and November Term 1870.

To June Term (March 12th) 1870 of the Court of Common Pleas of Butler county, William H. Miller and William F. Miller, elders, and Henry Kalb, deacon of "The German Evangelical Reformed St. Paul's Church, of Butler, Pennsylvania," filed a bill against F. H. Schnorr, William Vogeley, George Vogeley, jr., Peter Biehl, Gottlieb Langbein and others. The bill set out:—

1. That the above-named church was incorporated on the 4th of December 1865, "to worship Almighty God according to the faith and discipline of the German Evangelical Reformed Church in the United States," and subject to the control of the Synod of the German Reformed Church in the United States.

2 and 3. That on the 22d of March 1866, William Vogeley conveyed to the corporation a lot of land in the borough of Butler, expressly "for the use of a congregation of the German Evangelical Reformed Church, and with the condition that no change shall be made in said congregation for any other denomination." On this lot a brick church edifice had been erected.

4. That the congregation organized by the election of a pastor, three elders and three deacons, as provided in their charter, united with St. Paul's Classis of the German Reformed Church, and thereby with the Synod of the German Reformed Church in the United States, and was constituted a pastoral charge in connection with the congregation of Brady's Bend, and continued to worship in said church according to the faith and discipline of the German Reformed Church of the United States.

5. In June 1869, the consistory of the congregation was composed of the following officers: Pastor, Rev. C. A. Limberg; elders, William H. Miller, William F. Miller and George Vogeley, jr.; deacons, Henry Kalb, Peter Beihl and G. Langbein. That the said Vogeley, Beihl and Langbein, now defendants in the bill, and their co-defendants (except F. H. Schnorr) were then members of said congregation and worshippers in said church.

6. In June, Limberg resigned his charge, and the pastorate became vacant, although he proposed to preach occasionally till a new pastor should be installed; but some of the defendants locked the doors of the church, and refused to allow them to be opened

when he came to preach, and had since refused to allow him to preach.

7. The other defendants and their associates, being a majority of the congregation, in violation of the charter, chose and inducted into office a pastor, the defendant F. H. Schnorr, he not being a minister in connection with the Synod of the German Reformed Church, and he continued to act as pastor.

8. The defendants, in November 1869, had adopted a constitution, giving themselves a different name; providing that the German language only shall be used in their services; that the office of pastor should be filled by such minister as the congregation may select, and shall take no part in their temporal affairs; that they would no longer draw any distinction between Lutheran and Reformed; that it declared itself independent of all synods; that all former laws governing the congregation were revoked and made null and void;—all these acts being contrary to the constitution of the German Reformed Church of the United States.

9. The defendants refused to allow St. Paul's Classis of the German Reformed Church to meet in the church.

10. By reason of these acts of the defendants the property of the corporation had been diverted from its lawful uses; the plaintiffs and other members of the congregation were prevented from worshipping in the church according to the worship, faith and discipline of the German Reformed Church, and prevented from having a regular pastor of the German Reformed Church, and stated preaching in the church.

The prayers were :—

To restrain the defendants from further use and possession of the lot and church;

To restrain Schnorr from officiating as pastor so long as he is not connected with the Synod of the German Reformed Church, and to prevent the defendants from permitting any one else to officiate as pastor not being in such connection;

To declare that George Vogeley, jr., elder, and Peter Beihl and Gottlieb Langbein, deacons, had vacated their respective offices, and to restrain them from intermeddling with the affairs of the congregation, &c.;

To order defendants to restore the possession of the church and lot and all other property of the congregation to the plaintiffs, for the use of the adhering members of the congregation.

On the 18th of May 1870, the defendants filed their answer.

They admitted the allegations in the 1st, 2d and 4th paragraphs of the bill; in the 5th, except that Wm. F. Miller was installed elder. They admit the 6th so far as relates to Mr. Limberg; say nothing as to the allegations of locking the church, &c.; and declare that they desire the services of a minister of the German Reformed Church, to be placed according to its rules when a

vacancy occurs.   7. They do not desire to continue Mr. Schnorr as pastor unless St. Paul's Classis, to whom he has applied for admission, receive him as a member.   8 and 9. The grievances referred to in these paragraphs resulted from the improper conduct of Mr. Limberg, whose cause the Classis espoused, and would not send another pastor, and sought to force him on the congregation against its consent.   Before filing the bill, notice was given of a meeting of the congregation, which was accordingly held on the 13th of March 1870; it was then resolved that all that had been done at the meeting in November inconsistent with the charter be rescinded and modified so as to conform to it, "as effectually as if the same had never been adopted;" that the meeting desired to be in full fellowship and communion with the German Reformed Church.

"In answer to the 10th paragraph of the bill defendants say that the property of said congregation is not diverted from its lawful use, and that the plaintiffs are not prevented from worshipping in the said church according to the faith and discipline of the German Reformed Church, but are hereby and have been requested to meet and elect or call a pastor in connection with the Synod of the said German Reformed Church to fill the vacancy occasioned by the resignation of Rev. Limberg, and that the defendants desire to conform in good faith to the faith, discipline, rules and regulations of the German Reformed Church of the United States, only claiming equal rights with the plaintiffs in the lawful enjoyment of the church property, under the established rules of the said Reformed Church."

The charter of the congregation provided :—

Article 1.  "It shall be subject to the control of the Synod of the German Reformed Church in the United States, and shall in all respects be governed by its rules and regulations.

Article 2.  "The officers of this congregation shall be a pastor, three elders and three deacons.

"The pastor, elders and deacons shall constitute the consistory of the congregation.   A president, secretary and treasurer shall be elected by themselves and from their own number, from time to time, as occasion may require.

"Any member of this church or corporation who shall disclaim or refuse conformity to the said authority shall cease to be a member of this corporation, and shall not be elected, or vote in the election of the consistory, or exercise any office or function in, concerning or connected with the said church.

"It shall be the duty of the consistory to provide for the faithful enforcement of discipline, according to the constitution of the German Reformed Church, and to transact all other business of the congregation in the name of the congregation.

Article 3. " Every male member in good standing shall be entitled to vote.

" An election for the elders and the deacons shall be held annually on Easter Monday, and those thus chosen serve one year, or until successors are chosen.

" An election for pastor shall be held whenever his situation becomes vacant, according to the mode and regulations mutually adopted and prescribed.

" Every minister of the gospel who may become a candidate for the office of pastor must, before he can be chosen to, or at least before he can be inducted into, office, be in good standing in connection with the Synod of the German Reformed Church, &c.

Article 5. " The consistory may from time to time enact such by-laws for their government in the transaction of business as they may deem necessary ; provided, however, that they do not conflict with this constitution, or the consistory of the German Reformed Church, &c.

" Reference is made to the constitution of the German Reformed Church for full particulars. This congregation was organized only as a German Evangelical Reformed Congregation in Butler, Butler county, Pennsylvania, and that it be known hereby that no alteration can be made in this congregation for another denomination."

The 7th article of the constitution of the Classis is : " No call shall be valid unless the congregation or charge from which it proceeds has been constituted a pastoral station by the Classis, within whose bounds it is situated, and in every case it must appear that the people calling the minister really and truly intend to support and provide for him as their pastor."

E. Ferrero, Esq., was appointed master. Amongst other facts he found, that the Butler congregation was united with a similar association at Brady's Bend ; the joint charge, called the " Butler Mission," was under the charge of St. Paul's Classis. Mr. Limberg was appointed pastor of the mission in 1865. Mutual dis- satisfaction in the pastor and congregation soon appeared, and in 1868 Mr. Limberg tendered his resignation to the Classis. The Classis hesitating about the matter, the congregation, December 26th 1868, requested that the resignation should be accepted. There was some correspondence between the congregation or mem- bers of it and the Classis, and about March 1869 the name of a Mr. Vogeline was suggested as pastor. The Brady's Bend con- sistory were " willing to give him a trial," and Miller, one of the plaintiffs, took their proceedings in the matter, to lay them before the Butler consistory when the church doors were locked against Mr. Limberg. In June 1869, Mr. Limberg's resignation was accepted by the Classis, and on his own request he obtained permission to supply " Butler Mission," till a pastor could be obtained. In

accordance with this permission and an appointment announced to the Butler congregation from the pulpit two weeks previously, he went to the church and found it locked; he and his adherents were compelled to hold service in the Orphans' Home.    Since July 1869 the defendants had retained possession of the church property, excluded Mr. Limberg and the Classis, and "appropriated it to uses not sanctioned by the constitution of the German Reformed Church."    On the 22d of November 1869, the other defendants, "by an instrument in writing," declared themselves independent of all synods, and absolved from the government of the "German Reformed Church," and made the defendant Schnorr pastor; he not being connected with the German Reformed Church nor approved by St. Paul's Classis.    Since Mr. Limberg was excluded from the church, the plaintiffs had attended on his ministry at the Orphans' Home, and adhered to the doctrine and discipline of the German Reformed Church.    On the 6th of January 1870, the Classis directed that proceedings at law should be commenced on behalf of the Butler congregation for possession of the church.    On Easter Monday 1870, at an election held at the Orphans' Home, the plaintiffs, together with Henry Grupen, B. K. Fulcason and M. Fiehl, were chosen as consistory.    The defendants, on the 13th of March 1870, rescinded their proceedings of November 1869, as set out in their answer.

On the 20th of March, the defendants gave public notice and also personal notice, that there would be an election for a consistory at the church on Easter Monday.

The master further reported:— * * *

"Although the attaching of this congregation to that of Brady's Bend, was for financial considerations, yet the union failed to contribute sufficient for the pastor's support, and it became necessary for the St. Paul's Classis to make up the deficiency itself, by paying yearly $300.    This fact then made the relation between the classis and the congregation, one not only of corporation, but of maintenance.    Dependent therefore upon the classis for assistance of this nature, the congregations could not claim the attributes of a 'pastoral station,' nor could they possess any other privileges than those of a 'missionary charge.'    It is true the proper ecclesiastical judicatory might, in its discretion, grant to a congregation advanced so far as this one, rights not common to a mission, in a more primitive stage.    But until such concessions were made, or until a congregation attained the standard of a self-supporting charge, under article 7 of the constitution of the Classis, it could make no legitimate call." * * *

"It is a well-established principle, that, against the will of a minority, a majority cannot alter the fundamental articles of a corporation unless there be express or implied provisions in the articles themselves that they may do so.    The rescinding there-

fore of the ordinance of secession of 22d November, was so far as it relates to the property but a recognition of this principle and that other principle, that 'an unconstitutional law can give no authority.' But the defendants go still further than this, they voluntarily concede that they desire to be in full fellowship and communion with the German Reformed Church and that they desire a pastor in connection with and under the St. Paul's Classis. Had the defendants yielded so much two months sooner, it can hardly be doubted that they would have been regarded as members and that there would have been no occasion for filing the plaintiff's bill. But omitting to abandon their irregularities until after the Classis had directed legal steps to be taken, and failing to accomplish the concession until after the bill was filed, the burthen of the consequences must be borne by them. The fact that the defendants had given notice a week, or even two weeks before, that a meeting would be held to rescind the ordinance of secession, does not relieve them from the responsibility. This meeting was called to deliberate simply, but the fact of returning was not accomplished until the 13th March, one day after this bill was filed.

" And now what is the status of the defendants?

" In June 1869 we find them members in good standing and with the plaintiffs constituted a regularly organized congregation, in perfect accord with the letter and spirit of the constitution. Since then no judicatory, ecclesiastical or civil, has pronounced sentence of disqualification against them. Since then the congregation has been without any legitimate government, and disorder and confusion has prevailed. Two-thirds of the congregation, including one-half of its officers, have, in consequence of a supposed grievance, been supporting, since 22d November 1869, an unwarranted organization, and the rest refusing to support this organization, have failed to keep up any organization of their own. It is true, the plaintiffs have always given loyal adherence to the doctrines and principles of the church, have attended divine service from time to time at the residence of, and administered by, the Rev. Limberg; and on the last Easter Monday elected a consistory, notwithstanding the legitimate functions of the congregation were stopped; the election was not held until a month after the defendants had rescinded the objectionable resolutions, and given public and personal notice that the election would be held in the church on the same day. Suspended, then, in all its regular action, the congregation has, since June 1869, been in a condition of anarchy, and to restore it to an orderly government again, the period of confusion must be forgotten, and commencing at the time Mr. Limberg attempted to supply the vacant pulpits, recognise as members those who were then qualified voters, and who now declare themselves members of the congre-

gation, and willing to submit to its congregation and denominational order.

"From a careful consideration of the evidence adduced, the master is satisfied that the facts stated in the plaintiff's bill were true at the time of filing."

He then recommended a decree, declaring that the consistory elected on Easter Monday 1870 by the plaintiffs was vacant; that the court appoint judges to hold an election for a consistory; that those who were qualified voters on the 16th of July 1869, be entitled to vote at that election; but that none of the persons of the party of the defendants who have acted as elders and deacons since November 22d 1869 be eligible to the consistory; that Schnorr be perpetually enjoined from preaching, &c., in the congregation unless under the authority of the Classis; and that the other defendants be enjoined from permitting him or any other pastor so to officiate unless under the authority of the Classis."

Both parties excepted to the decree.

After argument the court decreed:—

"We enjoin the said defendants from preventing, or in any manner interfering with the occupation of the church building, &c., and possession of the same, by the complainants and others, who are qualified members of said church, and in submission to the authority and government of the German Evangelical Reformed St. Paul's Church of Butler, Pennsylvania, so that they may hold and have the same without let, &c., from the said defendants, &c.

"That the said F. H. Schnorr be restrained and perpetually enjoined from in anywise officiating as minister in the church edifice of the German Evangelical Reformed St. Paul's Church of Butler, Pennsylvania, and from intermeddling, &c., until he shall belong and is in connection with the Synod of the German Reformed Church in the United States.

"That the defendants be restrained and enjoined from permitting the said F. H. Schnorr, or any other person not being a minister of the gospel in connection with the Synod of the German Reformed Church in the United States to officiate as pastor, &c., in the said church edifice."

The defendants appealed to the Supreme Court, and assigned the decree for error.

*C. McCandless* (with whom was *J. M. Thompson*), for appellants, cited Suter *v.* Reformed Dutch Church, 6 Wright 503; Winebrenner *v.* Colder, 7 Id. 244.

*J. Bredin,* for appellees, cited Den *v.* Bolton, 7 Halsted 214.

The opinion of the court was delivered, January 16th 1871, by
17 P. F. SMITH—10

[Schnorr's Appeal.]

SHARSWOOD, J.—When property, real or.personal, is vested in a religious society, whether incorporated or not, as a church or congregation for the worship of Almighty God and the promotion of piety and godly living, it is a charitable use whether the donors be one or many. The corporation or society are trustees, and can no more divert the. property from the use to which it was originally dedicated, than any other trustees can. If they should undertake to divert the funds, equity will raise some other trustee to administer them and apply them according to the intention of the original donors or subscribers. When the founders or donors have clearly expressed their intention that a particular set of doctrines shall be taught, or a particular form of worship.and government maintained, it is not in the power of individuals having the management of the institution at any time to alter the purpose for which it was founded. When a church has been organized, and been endowed, whether by donation or subscription, as belonging to any particular sect or in subordination to any particular form of church government it cannot break off from that connection and government: The Attorney-General *v.* Pearson, 3 Merival 352. When, however, it is not described in the original donation or terms of subscription as in connection with or under the ecclesiastical jurisdiction of any particular body of believers, it may change its relation, provided there be in such change no radical departure from the original faith or doctrine : The Presbyterian Congregation *v.* Johnston, 1 W. & S. 9 ; Lutheran Congregation of Pine Hill *v.* St. Michael's, &c., of Pine Hill, 12 Wright 20.

In church organizations those who adhere and submit to the regular order of the church, local and general, though a minority, are the true congregation and corporation, if incorporated : Winebrenner *v.* Colder, 7 Wright 244. The title to the church property of a divided congregation is in that part of it which is acting in harmony with its own law, and the ecclesiastical laws, usages, customs and principles which were accepted among them before the dispute began, are the standards for determining which party is right : McGinnis *v.* Watson, 5 Wright 9. If the opinion of Chief Justice Lowrie in this last case may seem to controvert any of these positions, and to hold that a congregation may change a material part of its principles or practices without forfeiting its property on the ground that to deny this "would be imposing a law.upon all churches that is contrary.to the very nature of all intellectual and spiritual life ;" and because the guarantee of freedom to religion forbids us to understand the rule in this way, I ask leave most respectfully to enter against it my dissent and protest. I do so the more freely because it was entirely extrajudicial to any question in the case. Courts which have the supervision and control of all corporations and unincorporated societies

or associations, must be guided by surer and clearer principles than those to be derived from the nature of intellectual and spiritual life. The guarantee of religious freedom has nothing to do with the property. It does not guarantee freedom to steal churches. It secures to individuals the right of withdrawing, forming a new society, with such creed and government as they please, raising from their own means another fund and building another house of worship; but it does not confer upon them the right of taking the property consecrated to other uses by those who may now be sleeping in their graves. The law of intellectual and spiritual life is not the higher law, but must yield to the law of the land.

The application of the principles settled in the adjudications cited, to which many others might be added, to the case brought before us on this appeal is very easy. The German Evangelical Reformed St. Paul's Church of Butler, Pennsylvania, was incorporated by the Court of Common Pleas of Butler county. The charter recites that the subscribers with others had "associated for the purpose of worshipping Almighty God according to the faith and discipline of the German Evangelical Reformed Church in the United States of America," and in the third section of the first article it is expressly provided that "it shall be subject to the control of the Synod of the German Reformed Church of the United States, and shall, in all respects, be governed by its rules and regulations;" and the fourth section of the third article declares that "every minister of the gospel who may become a candidate for the office of pastor, must, before he can be chosen to, or at least before he can be inducted into office, be in good standing in connection with the Synod of the German Reformed Church." As though to obviate all possible doubt or question upon the subject, the last paragraph of the charter expressly declares: "This congregation was organized only as a German Evangelical Reformed Church in Butler county, Pennsylvania, and that it be known hereby, that no alteration can be made in this congregation for another denomination." Under a charter thus carefully guarded, the building, which is the bone of contention here, was erected with funds raised by voluntary contribution from the subscribers upon a lot given for the purpose. It is unnecessary to refer to the troubles in the church, or to pass any judgment upon the acts of either party. The defendants, on the 22d of November 1869, by an instrument of writing declared themselves independent of all synods, and absolved from the government of the German Reformed Church, and elected a clergyman as pastor not connected with the German Reformed Church. They took and held possession of the building. Those who were dissatisfied with these proceedings withdrew, and on Easter Monday 1870, the day fixed in the charter, held an election at the

Orphans' Home, at which the plaintiffs were chosen members of the consistory, and they now file this bill to obtain possession of the building. The defendants also held a meeting at the church on the same day, and elected a consistory. There can be no question that the plaintiffs and those whom they represent were on Easter Monday 1870, the true church adhering to the ecclesiastical order and denomination under which the organization originally took place, and the articles of which organization impressed it expressly with a law, which forbade its ever becoming disconnected with that denomination. No provision in the charter required the election of the consistory to be at the church, and the wrongful act of the defendants in holding possession dispensed, so far as they were concerned, with the necessity of any notice in the church, of an election to be held elsewhere. It does not lie in the mouth of the defendants to object in any way in this proceeding to the regularity of the election of the plaintiffs. The defendants are strangers. They made themselves so by their solemn act, throwing off their connection with the German Reformed Church. That they then seceded and withdrew from the church cannot be doubted. How, then, can their meeting afterwards and rescinding the resolution of secession restore them to membership, much less constitute them the true church, and authorize them to elect a consistory? The plaintiffs, and those whom they represent, were the true church; with them the defendants ought to have reunited, if, as they contend, they had not lost their membership, and voted at their election. It is clear, then, that the plaintiffs had the legal right to the possession and control of the church property, and that the decree below was in all respects proper.

Decree affirmed and appeal dismissed at the cost of the appellants.

WILLIAMS, J.—I concur with my brethren in affirming the decree of the court below, and dismissing the appeal, on the ground that this case comes strictly within the ruling of the court in Sutter *et al. v.* Reformed Dutch Church, 6 Wright 503, that a majority of a church congregation may direct and control in church matters consistently with the particular and general laws of the organism or denomination to which it belongs, but not in violation of them, and that in church organizations those who adhere and submit to the regular order of the church, local and general, though a minority, are the true congregation and corporation, if incorporated : Winebrenner *et al. v.* Colder *et al.*, 7 Wright 244.