# Chrapko et al. *v.* Kobasa et al., Appellants.

*Equity—Church law—Findings of fact by chancellor—Evidence.*

1. A finding by a court of equity that a particular church is a
Greek Catholic Church, instead of a Russian Orthodox Church, will
not be reversed on appeal, where the evidence is sufficient to sus-
tain the findings, although there is a sharp conflict in the evidence.

*Church law—Equity—Control of property—Changes in doctrine
and forms—Rights of minority.*

2. A majority faction cannot direct a church from the purpose
for which it was established, and those adhering to that purpose,
though a minority, are the true congregation.

3. A faction cannot introduce vital changes in forms and funda-
mental doctrine, and at the same time assert the right of possession
and control of the church property.

Argued May 25, 1921. Appeal, No. 39, Oct. T., 1921,
by defendants, from decree of C. P. Butler Co., March T.,
1920, No. 3, on bill in equity, in case of Michael Chrapko
et al. v. Gregory Kobasa et al. Before MOSCHZISKER,
C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ. Affirmed.

Bill in equity for injunction. Before REIBER, P. J.
The opinion of the Supreme Court states the facts.
Decree for injunction. Defendants appealed.

*Error assigned,* among others, was decree, quoting it.

*J. Campbell Brandon,* of *Brandon & Brandon,* with him *S. F. Bowser* and *Levi M. Wise,* for appellants.—The term Greek Catholic is a general term and in itself does not indicate what higher authority is recognized by a church with that name. This question is squarely ruled in Greek Catholic Church v. Orthodox Greek Catholic Church, 195 Pa. 425.

The lower court failed to consider the existence of St. Michael's Greek Catholic Church as an independent body and in so doing fell into the error of the lower court in Dochkus v. Lithuanian Benefit Society, 206 Pa. 25.

*E. J. McKenna,* of *McKenna & McKenna,* with him *James M. Galbraith,* for appellee, cited: Roshi's App., 69 Pa. 462; Dochkus v. Lithuanian Ben. Soc., 206 Pa. 25; Furmanski v. Iwanowski, 265 Pa. 1; Schnoor's App., 67 Pa. 138; St. Paul's Reformed Church v. Hower, 191 Pa. 306; Lutheran Congregation App., 6 Pa. 201; Bose v. Christ, 193 Pa. 13.

OPINION BY MR. JUSTICE WALLING, July 1, 1921:

This suit in equity between factions is to determine the right of use and control of church property. In 1905, a group of people, speaking the Slavish language, met at Lyndora in Butler County to organize a church. The following year they erected a building, and in 1907 were granted a charter under the name of, and since known as, St. Michael's Greek Catholic Church. In 1919 the church trustees, with the approval of a majority of the membership, chose the defendant, Rev. Gregory Kobasa, as priest or pastor of the church. He was not a Catholic, but at first conducted the services according to the forms and ritual of that faith, to which some members of the church objected, whereupon he changed the form of worship to that of the Russian Orthodox Church; then a minority of the membership, adhering to

the Catholic faith, had the administrator (acting bishop) of the Greek Catholic Church appoint to this charge a priest of that faith, named Hundiak, who was refused admission by the trustees, supported by a majority of the membership. Thereafter, the plaintiffs, Catholic members, filed this bill against the trustees and Kobasa, to secure his ejection and the admission of Hundiak, on the ground that it was a Catholic church. A preliminary injunction was granted and the case went to trial upon bill, answer, replication and conflicting testimony. The chancellor found the facts in favor of the plaintiffs, and, after dismissing exceptions, a final decree was entered, restraining Kobasa, in effect, from officiating in the church, and directing the trustees to admit Hundiak for that purpose, but not taking the church property out of the custody of the trustees. This appeal by defendants is from the decree so entered.

A Uniat Catholic Church is one where prayers are offered for the pope and where he is recognized as head of the church. The question was raised as to whether a Greek Catholic Church was necessarily of that character; and from the evidence the chancellor finds as a fact, "Ecclesiastically and historically Greek Catholic and Uniat Greek Catholic are synonymous terms and signify a church which acknowledges the supremacy of the Holy See at Rome." Among other findings tending to support the chancellor's conclusion that this is a Catholic church are, in substance, that on the corner stone are carved the words, "St. Michael's Greek Catholic Church"; that every one who ministered in that church or to the congregation from its organization in 1905 until the coming of Kobasa in 1919, was a Uniat Greek Catholic priest, sent by a Catholic bishop, and conducted the services according to the rites, usages and customs of that denomination, and the church contributed to its diocesan fund; that Bishop Ortynsky of the Greek Catholic Church held services in this church and is named as a trustee in one of the deeds to the church;

that a lot conveyed in 1906 to the trustees of St. Michael's Greek Church was reconveyed in 1910 to the trustees of St. Michael's Greek Catholic Church, with a recital that the lot had been purchased by the latter, and the name erroneously stated in the original deed. The charter recites that, "Said Corporation is formed for the purpose of the worship of Almighty God according to the faith, doctrine, creed, discipline and usages of the Greek Catholic Church"; and clause VII provides that, "Any property, real or personal, which shall hereafter be bequeathed, devised or conveyed to said corporation shall be taken and held to inure to it subject to the control and disposition of the lay members thereof or such constituted officers or representatives thereof as shall be composed of a majority of lay members."

The first pastor of the church was a Uniat Greek Catholic priest, who testified he was present at the meeting for its organization and solicited subscriptions to build it and in effect that it was from its inception a Greek Catholic church.

The testimony for the defendants, including several witnesses present at the organization and the minutes kept on that occasion, is to the effect that it was to be a Greek Russian Church, or a Russian Orthodox Church, at least a non-Catholic church. Some of the proof tends to show it was an independent church and selected or at least approved the selection of its pastors.

While there is a sharp conflict in the evidence, it cannot be affirmed that the chancellor's findings of fact are clearly wrong; therefore, they must be accepted. The facts as found justify the decree entered; for the law is clear that even a majority faction cannot divert a church from the purpose for which it was established, and those adhering to that purpose, though a minority, are the true congregation: Schnorr's Appeal, 67 Pa. 138. A faction cannot introduce vital changes in forms and fundamental doctrine and at the same time assert the right of possession and control of the church property: Kicinko v.

Petruska, 259 Pa. 1, 6. Where there are factions in a church congregation, its property and custody belong to those who adhere to the principles, practices and forms of worship for which it was founded and dedicated, and which were accepted by the congregation before the dispute arose: McGinnis v. Watson, 41 Pa. 9; Roshi's App., 69 Pa. 462; Schnorr's App., supra; Bose v. Christ, 193 Pa. 13. In other words, "The title to the church property of a congregation that is divided is in that part of the congregation that is in harmony with its own laws, usages and customs as accepted by the body before the division took place and who adhere to the regular organization": Krecker v. Shirey, 163 Pa. 534; Greek Catholic Church v. Orthodox Greek Church, 195 Pa. 425. Plaintiffs' case is strengthened by the finding that until the coming of Kobasa the Catholic form of worship was maintained in the church by priests of that faith.

Admittedly Kobasa is not a Catholic; hence, the church in question having been found to be one of that faith, it was beyond the power of its trustees, and the majority faction of the congregation, to authorize him to act as pastor thereof, and the decree properly excludes him from so doing and directs the admission of the duly appointed Catholic priest.

The decree is affirmed and appeal dismissed at the costs of appellants.