# Nagle et al. v. Miller et al., Appellants.

*Church law—Division of congregation—Property rights—Find-ing of chancellor—Appeal.*

1. In the event of a division of a congregation of a church, the title to its property vests in that faction, whether majority or

minority, which continues to act in harmony with the law, usages and customs accepted by the body before the dispute arose.

2. An independent congregation is governed by the majority of its own membership so long as they act within the purposes of the organization.

3. If a congregation is connected with a given denomination or creed, it is bound not only by its own rules and laws, but by the laws and usages of the particular sect or ecclesiastical organization with which it is affiliated.

4. A mere change of synodical connection or the formation of a union between different synods whose doctrines and teachings are substantially the same and by the regularly appointed legislative bodies of the denomination or sect, is not a change constituting a diversion of the church property, and members of a single body adhering to such union constitute the true congregation.

5. The questions of doctrine and principles arising in religious denominations from time to time are for the determination of the members, through their duly appointed representatives, in the manner provided by church law, and the civil courts will not undertake to determine between one theory and another, so long as there appears no serious departure from the generally accepted teachings of the organization, coupled with an attempt to divert church property to a purpose radically different from that for which it was acquired.

6. A finding by a chancellor that there had been no radical departure from the faith and discipline of a particular denomination or creed, if supported by sufficient and competent evidence, will not be reversed on appeal, in the absence of clear error.

Argued May 24, 1922. Appeal, No. 16, May T., 1922, by defendants, from decree of C. P. Dauphin Co., No. 637, Equity Docket, on bill in equity, in case of U. G. Nagle et al., Trustees, and Wm. Hoover et al., Deacons of the Evangelical Lutheran Church of the Holy Communion of Harrisburg, Pa., v. Rev. John H. Miller et al. Before Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Affirmed.

Bill in equity for injunction. Before Henry, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Injunction decreed. Defendants appealed.

*Error assigned,* inter alia, was decree, quoting it.

*William M. Hain,* with him *Edwin M. Hershey* and *Thomas S. Hargest,* for appellants.—The government of the Lutheran Church is congregational and any congregation has a right to withdraw from a synod or the general body unless prevented by the terms of the trust or by its charter: Trexler v. Menning, 2 W. N. C. 677; Lutheran Congregation v. St. Michael's Evangelical Church, 48 Pa. 20; St. John's L. R. C. Church's Petition, 270 Pa. 73.

There is nothing in the charter that requires the congregation to be a part of the general council.  It is only required to worship according to the faith as promulgated by the general council.  It could be an independent church and do this: McAuley's App., 77 Pa. 397; McGinnis v. Watson, 41 Pa. 9; Presbyterian Congregation v. Johnston, 1 W. & S. 9.

*Wm. H. Earnest,* with him *S. S. Rupp,* for appellee.— The title to the church property in a divided congregation, is in that part of it which is acting in harmony with its own law; and the ecclesiastical laws, usages, customs, and principles which were accepted among them, before the dispute began, are the standard for determining which party is right: McGinnis v. Watson, 41 Pa. 9.

OPINION BY MR. JUSTICE FRAZER, September 25, 1922:

The purpose of the bill in this case is to determine the right to the possession of church property.  The Evangelical Lutheran Church of the Holy Communion of Harrisburg, Pennsylvania, was created in 1904 by the Lancaster Conference of the Lutheran Church and became affiliated with the Evangelical Lutheran Ministerium of Pennsylvania and Adjacent States, a synod of the General Council of the Evangelical Lutheran Church in America.  Shortly after organization, the congrega-

tion purchased ground and erected a church building receiving for that purpose financial aid from the Lancaster Conference, the Lutheran Ministerium of Pennsylvania and the Board of English Home Missions of the General Council of the Evangelical Lutheran Church in North America.  In 1905, the Church of the Holy Communion was incorporated under the laws of this Commonwealth for the purpose of worship "according to the faith, doctrine, discipline and usages of the Evangelical Lutheran Church as interpreted and promulgated by the General Council of the Evangelical Lutheran Church in North America."  In 1918, this General Council merged with the General Synod of the Evangelical Lutheran Church of the United States and the Evangelical Lutheran Church of the United Synod in the South under the name of the United Lutheran Church in America.  A number of the members of the congregation of the Church of the Holy Communion opposed the merger and its representatives at the Lancaster Conference protested against the union of the different bodies, and, upon the merger being consummated, a congregational meeting was convened at which of the 140 members 34 voted to sever connection with the ministerium and Lancaster Conference and 13 voted to remain with those bodies; subsequently 59 members protested in writing to the ministerium against the withdrawal action.  The minority, having refused to acquiesce in the course adopted by the majority, were excluded from the church and thereupon instituted this proceeding in equity asking that the action taken at the congregational meeting be declared illegal and an unlawful diversion of the church property.  Defendants' answer denied plaintiffs' averments and claimed the Church of the Holy Communion was not bound by the course adopted by the General Council in forming a union with other synods under the name of the United Lutheran Church in America, alleging such union constituted a departure from the original purpose of the

church and that defendants, owing to such procedure, were at liberty to withdraw and retain possession of the church property. The court below held the action of the synod to be binding on the Church of the Holy Communion; that defendants, though a majority of the congregation, were without authority to withdraw and take with them the church property and, in accordance with the findings, entered a decree sustaining the rights of plaintiffs as the true organization.

The principles of law applicable to a controversy of this nature are well settled. In the event of a division of a congregation the title to its property vests in that faction, whether majority or minority, which continues to act in harmony with the laws, usages and customs accepted by the body before the dispute arose: Schnorr's App., 67 Pa. 138; Bose v. Christ, 193 Pa. 13; Kicinko v. Petruska, 259 Pa. 1; Shrapko v. Kobasa, 271 Pa. 447. An independent congregation is governed by the majority of its own membership so long as they act within the purposes of the organization, but, if connected with a given denomination or creed, is bound, not only by its rules and laws, but by the laws and usages of the particular sect or ecclesiastical organization with which it is affiliated (McGinnis et al. v. Watson et al., 41 Pa. 9; Schnorr's App., supra; Winebrenner v. Colder, 43 Pa. 244) provided, of course, the action of the general governing body is not contrary to the general doctrine and laws of the church: McAuley's App., 77 Pa. 397; Kerr's App., 89 Pa. 97. This court has held that a mere change of synodical connection (Pine Hill Lutheran Congregation v. St. Michael's Church, 48 Pa. 20), or the formation of a union between different synods whose doctrines and teachings are substantially the same and by the regularly appointed legislative bodies of the denomination or sect, is not a change constituting a diversion of the church property and that the members of a single body adhering to such union constitute the true congregation: McGinnis et al. v. Watson et al., supra;

Appeal of Ramsey et al., 88 Pa. 60; Mack v. Kime, 129 Ga. 1. Under the foregoing principles of law, the definite questions for determination are, (1) whether the Church of the Holy Communion is an independent and not a subordinate body and therefore not subject to the rule of the general body of the church and, (2) if a subordinate organization, whether the action of the synod in forming a merger with other synods is so far beyond the rules and doctrines of the church as to constitute a diversion of its property from the original purpose of the organization.

The first question must be considered and answered from the circumstances connected with the organization of the Church of the Holy Communion and the provisions in its charter subsequently obtained. Originally the congregation was organized as a mission under the supervision of the Lutheran Ministerium of Pennsylvania and adjacent states, through its agent, the Lancaster Conference. Subsequently, upon application, the congregation was admitted into the ministerium and conference. Its pastors have always been members of the Lancaster Conference and represented the church in the sessions of that body. Financial aid was received from the conference as well as from the General Council of the Evangelical Lutheran Church in North America, which council is made up of delegates from the various synods of the denomination, the Pennsylvania Synod being one of the units. As appears by its charter, the Holy Communion Church was incorporated for the purpose of public worship "according to the faith, doctrine, discipline and usages of the Evangelical Lutheran Church as interpreted and promulgated by the General Council of the Evangelical Lutheran Church in North America" and, as provided in article 1, section 2 of the constitution of the church, "in union with the Evangelical Lutheran Ministerium of Pennsylvania and Adjacent States." Among the principles of church polity of the Church in North America is a provision that the

representatives of congregations convened in synods and acting according to the church constitution are representatively the congregations themselves and the judgments of synods are the judgments of the church. It would be difficult to find a clearer authority controlling the membership of a subordinate body than is found in these provisions; the court below was, consequently, fully justified in finding the Church of the Holy Communion to be an associated church in union with the Ministerium of Pennsylvania, the Lancaster Conference and the United Lutheran Church in America and subject to the order and discipline of the denomination and synod to which it belongs and, consequently, not authorized to divert its property from the purposes of that organization.

It remains to consider whether the merger of the synod with other synods of the church exceeded the authority of the general council, and was the action such departure from the ancient usages and doctrines of the church as to constitute a diversion of the church property from its original purpose? Defendants' contention is that the United Lutheran Church and the General Council differed in their fundamental doctrines with respect to the question of altar fellowship, secret societies, revival services and in creating the commission of adjudication. The court below found as a fact that "the doctrinal basis and church polity of the Ministerium of Pennsylvania, the General Council and the United Lutheran Church, are the same in every essential particular." This finding is amply supported by the evidence.

With respect to the altar fellowship we find no constitutional provision touching that subject; there is, however, a regulation known as the Galesburg Rule, adopted at a meeting of the General Council, which provides that Lutheran ministers alone shall fill Lutheran pulpits and that Lutheran altars shall be restricted to Lutheran communicants. Church leaders testified, and the court

below so found upon ample testimony, that the rule has not been universally followed; that its observance was intrusted to the conscience of the individual pastor and congregation and that it is in no way affected by the merger. We are fully in accord with the sentiment expressed by the court below, in discussing the rule, to the effect that a departure from its strict enforcement is more in consonance with the principles of the Christian religion, as well as the modern tendency toward coöperation of all forms of Christian belief.

With respect to secret societies: While the ministerium of Pennsylvania prohibits membership in such associations, both the constitutions of the General Council and the United Church are silent on the question. Hence, no change has been made in respect to this question. The same is true as to the holding of revival services, there being no constitutional provision relating to that form of service.

The Commission of Adjudication is a sort of ecclesiastical court created by the United Church for the purpose of deciding questions of doctrine or principle referred to it by the various synods. Previous to the merger, such questions were decided by the General Council at its regular meetings. While the powers of the commission are somewhat broader than were those of the council, an appeal lies from its finding to the general body of the church. The difference in practice is a difference in form only by placing in the hands of a permanent committee duties and powers formerly exercised by a special committee. The testimony amply supports the conclusion of the court below that "none of these alleged changes in the polity of the Evangelical Lutheran Church indicates any substantial departure from the faith, doctrine, discipline and usages of the General Council, and, so far as they indicate change, would seem to be only such as might be expected in the development incident to a union of several great bodies of closely allied religious belief." We find in the merger

no departure from the fundamental doctrines and principles of the Lutheran Church, sufficient to justify a civil court in saying that the church property of the Holy Communion congregation has been diverted from its original purpose. Differences of opinion are the natural result of moral, spiritual and social growth and are unavoidable in every religious denomination. In the development of the human race, changes in spiritual matters must necessarily follow if the race is to continue to progress. The questions of doctrine and principles arising in religious denominations from time to time are for the determination of the members, through their duly appointed representatives, in the manner provided by church law, and the civil courts will not undertake to determine between one theory and another, so long as there appears no serious departure from the generally accepted teachings of the organization, coupled with an attempt to divert church property to a purpose radically different from that for which it was acquired. The modern tendency of church organizations being toward unity of all creeds, we cannot say the union of the synods here involved constituted a diversion of the property in question from its original purpose.

It follows from the foregoing that plaintiffs and those whom they represent are together the true Holy Communion congregation and as such have the legal right to the possession and control of the church property.

The decree of the court below is affirmed, costs to be paid by appellants.