# Commonwealth ex rel. Heil et al. *v.* Stauffer et al., Appellants.

*Church law—Union among churches—Merger of two churches—Votes—Approval of merger by law of church—When courts will not interfere.*

1. One religious denomination has an inherent right to unite with any other, unless there is an explicit pronouncement to the contrary in its constitution, religious standards or forms of government.

2. Union among churches is a legitimate part of their purpose and of their freedom, which the courts will not attempt to direct or limit.

3. Where a merger between two church organizations of a federated character has been properly effected, the courts will uphold those adhering to the merger, as the true congregation in each particular church.

4. Where the plan of church government is of the federated and not of the congregational character, it makes no difference how many individual members, or particular churches, oppose a merger with another denomination, if it has been approved, in the way prescribed by the law of the church, by a sufficient proportion of the entire membership or churches.

5. Unless otherwise specifically provided, only those actually voting are to be considered in determining whether or not a proposition has been approved by the requisite proportion of those entitled to vote on it.

*Contracts—Construction—Particular clauses—Writings—Substitution of words.*

6. Particular clauses appearing in a writing dealing with a number of subjects, must be interpreted in the light of their location in the writing.

7. In interpreting a writing, the courts should not substitute one word for another, if the effect will be to alter the plain meaning of the language actually employed.

*Church law—Provision as to change—Decision by highest church authority—When courts will not interfere—Doctrines—Abandonment of chartered purpose.*

8. A provision in the discipline of a church, that the articles of faith shall never be changed, must receive a reasonable interpretation. It is not intended as an impassable barrier to all

changes, but only as a protection against the introduction of heretical doctrines, destructive of the distinctive theological character of the church.

9. Whenever questions of discipline or of faith, or of ecclesiastical rule, custom or law, have been decided by the highest of the church judicatories, to which the matter has been carried, the courts will accept such decisions as conclusive of the point, just as in the case of other judicial tribunals.

10. Courts of law will interfere in such matters only when it is manifest that what the church tribunal has adjudicated, is not a difference of opinion as to doctrines or teachings, but an attempt, in the form of such adjudication, to abandon the purposes for which the church was organized.

Argued November 23, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 182, Jan. T., 1926, by respondents, from judgment of C. P. Lebanon Co., Dec. T., 1923, No. 8, for relators, in case of Commonwealth ex rel. W. F. Heil et al. v. E. E. Stauffer et al. Reversed.

Quo warranto to determine title of college trustees. Before HENRY, P. J.

The opinion of the Supreme Court states the facts.

Judgment for relators. Respondents appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*Stevens Heckscher,* of *Duane, Morris & Heckscher* and *W. H. Earnest,* of *Earnest & Milnor,* with them *Becker & Ehrgood, S. S. Rupp* and *Treadway & Marlatt,* for appellants.—In the merger of the United Evangelical Church and the Evangelical Association, the questions of procedure, laws of the church, changes of faith and polity, raised by relators, were all ecclesiastical questions; were all decided by the highest tribunal of relators' church in favor of the merger; and should be controlling in our civil courts unless contrary to some

enactment of Pennsylvania law: M'Ginnis v. Watson, 41 Pa. 1; Watson v. Jones, 13 Wallace 679; Schlichter v. Keiter, 156 Pa. 119; Krecker v. Shirey, 163 Pa. 534; Furmanski v. Iwanowski, 265 Pa. 1; St. Casimir's Polish R. C. Church Case, 273 Pa. 494; Nagle v. Miller, 275 Pa. 157; McDowell v. Wilson, 252 Pa. 91.

The procedure by which the merger was consummated was not contrary to the discipline of the United Evangelical Church, and where the discipline was capable of two interpretations the interpretation adopted was approved by the General Conference and by the overwhelming majority of the voting members of the annual conferences.

The United Evangelical Church had implied power to merge with a similar denomination through action of its conferences. Neither the laws of the church, nor the Statutes of Pennsylvania, required a vote of the congregations to consummate the merger: Barkley v. Hayes, 208 Fed. 319.

The merger did not work any radical changes in the articles of faith or the polity of the United Evangelical Church.

*Arthur L. Shay* and *William A. Glasgow, Jr.,* with them *Walter C. Graeff,* for appellees.—The decree of a church judicatory is binding only where it is affirmatively shown that it has acted within the scope of its authority and has observed its own organic forms and rules: Kerr's App., 89 Pa. 97; McDowell v. Wilson, 252 Pa. 91; Green v. Society, 1 S. & R. 254; Presbyterian Cong. v. Johnson, 1 W. & S. 9; O'Hara v. Stack, 90 Pa. 477; Krecker v. Shirey, 163 Pa. 534.

The title of the church property of a divided congregation is in that part of it which is acting in harmony with its own law, and the ecclesiastical laws, usages, customs and principles which were accepted among them before the dispute began are the standards for determining which party is right: Roshi's App., 69 Pa. 462;

Schnorr's App., 67 Pa. 138; McAuley's App., 77 Pa. 413; Hochreiter's App., 93 Pa. 479; Gorman v. O'Connor, 155 Pa. 239; Krecker v. Shirey, 163 Pa. 534; Bose v. Christ, 193 Pa. 13; Kicinko v. Petruska, 259 Pa. 1; Chrapko v. Kobasa, 271 Pa. 447.

Where a corporation is composed of several integral parts, and each part consists of a definite number, a majority of each part must be present to constitute a quorum: St. Mary's Church Case, 7 S. & R. 517, 586-7; Schlichter v. Keiter, 156 Pa. 119.

The church law of the United Evangelical Church recognizes that all property rights are in the congregation and this coincides exactly with the law of the State: Kerr's App., 89 Pa. 97; McDowell v. Wilson, 252 Pa. 91.

OPINION BY MR. JUSTICE SIMPSON, April 11, 1927:

The charter of Albright College provides that certain of its trustees shall be chosen by the East Pennsylvania Annual Conference of the United Evangelical Church. By this action of quo warranto, relators seek to have it adjudged that they, and not respondents, are the trustees selected by that conference. Admittedly the proper determination of their claim depends on whether or not the newly organized Evangelical Church was legally formed by the merger of the Evangelical Association and the United Evangelical Church. If it was, then respondents, who were selected by the annual conference of the consolidated church, are the duly elected trustees; if it was not, then relators, who were selected by those denying that the merger was legally effected, are entitled to the office. The court below entered judgment for relators and respondents appeal.

In 1800 a body of Christians, under the leadership of Jacob Albright, formed a religious association, which a few years afterwards became known as the Evangelical Association. In 1891 certain members withdrew and formed the United Evangelical Church. A brief history of that controversy will be found in our opinion in

Krecker v. Shirey, 163 Pa. 534. It later became evident to many of the members of each denomination, however, that no real reason existed for their continued separation. In 1910, the general conference of each church appointed a commission, charged with the duty of acting together in drafting a tentative plan for the organic reunion of the two bodies. This they did, and their plan was reported to, and unanimously approved by each general conference, which thereupon appointed a new committee, charged with the further duty of acting together in preparing a discipline for the reunited church, to be reported to the respective general conferences. This also was prepared, and unanimously adopted by the joint committee. Instead of first making their report to the general conferences, the committee, with the approval of the Judiciary Committee of the United Evangelical Church, sent the plan to each annual conference of both denominations, with a request that they vote upon it and report the result to the general conference to which that particular annual conference was attached. Up to this point, so far as appears, there were no dissentients in either church.

All of the annual conferences of both organizations affirmatively approved of the plan, by considerably more than a two-thirds vote, except the East Pennsylvania Annual Conference of the United Evangelical Church, a majority of which refused to act on the matter, because, as they claimed,—and this was apparently their only objection at the time,—the joint committee erred in not making its report only to the respective general conferences. This was an ungracious objection on their part, since the report was first submitted to the annual conferences at the suggestion of their own representatives. The action of the annual conferences was reported to the general conferences, each of which duly approved the basis of union and the discipline prepared by the committee, and the two then met in joint session and organized the consolidated body, under the name of the

Evangelical Church. The effect of that approval was to make unimportant the above objection of the East Pennsylvania Annual Conference, for the general conferences, which had appointed the joint committee, had an unquestionable right to approve of its action, though the plan had not been sent forward in exact accord with the method specified at the time of its appointment.

At the time the merger was .approved by the general conference of the United Evangelical Church, the representatives of the East Pennsylvania Annual Conference entered a protest, setting forth additional reasons why it should not be effectuated under the then existing circumstances. These objections may be briefly summarized as follows: (1) The discipline of the United Evangelical Church did not contemplate a merger with any other denomination, and hence the power to effect it must, in the first instance, be obtained from the membership of the church; (2) The plan of union was not ratified by "two-thirds of the members of all the annual conferences"; (3) It proposed to change the articles of faith of the United Evangelical Church, which, under its. discipline, could never be done; (4) It also antagonized the provision of the discipline that "the annual conference shall never be deprived of the right to determine the legality of its own organization"; and (5) It also proposed to transfer the congregation to the new organization, at another time than "in the month preceding the regular session of the annual conference." After full consideration, these objections were overruled by the general conference, and the plan of union unanimously adopted,—the representatives of the East Pennsylvania Annual Conference declining to vote.

So far as appears, the members of this annual conference are still the only dissentients, and the question to be decided is whether they can, by their objections as above stated, defeat the reunion of these essentially similar religious organizations. In answering this, several matters are to be steadily borne in mind. The point to be

decided is not the same as that which arises when the beneficial interest in trust property is to be determined. In such cases, the intention of the donor is the pole-star of interpretation, and, unless he consents, that intention cannot be affected by matters subsequent. Nor is the point here the same as that which arises when there has been a schism in a particular congregation, but the general church organization remains as before. In this class of cases we sustain that portion of the membership of the particular church which adheres to the parent body. Here, however, the question is which is now the parent body, and in determining this we have held that, if the union is properly effected, the unionists in each particular church are the true congregation, and the change is not a diversion of church property: Nagle v. Miller, 275 Pa. 157. In Ohio the question under consideration has been thrice answered in favor of the merger: Burkett v. Stake, 24 Ohio Law Bulletin & Reporter 235; Burkett v. Hess, Ibid. 239, and Wilson v. Fromm, Ibid. (Nisi Prius Rep., n. s.) 75. In those cases, though the underlying issue was the same as that here, the present record does not so disclose the facts in them as to enable us to decide that the judgments there, under the principles set forth in Com. ex rel. v. Kelly et al., 287 Pa. 139, adjudicate this action also.

Turning then to the specific objections made by relators, we find that, as contended by them, the discipline of the United Evangelical Church did not provide a method by which the entire organization could be merged with any other denomination. Nor was it necessary that it should. The right to so unite is inherent in every religious denominatoin (Hayes v. Manning, 263 Mo. 1; Harris v. Cosby, 173 Ala. 81; Barkley v. Hayes, 208 Fed. 319), unless there is an "explicit pronouncement to the contrary in their constitution, religious standards or form of government": Barkley v. Hayes, supra, page 325. "Union among churches is a perfectly legitimate part of their purpose and of their freedom,

and mutual concession is part of the natural law of it, which we cannot direct or limit......We cannot condemn such proceedings as unlawful without deciding ......that the law almost compels the perpetuation of divisions": McGinnis. v. Watson, 41 Pa. 9, 27. It follows that when a plan of union is approved by the appropriate church tribunals, it will be sustained, unless it appears that the effect of so doing will be "to utterly abandon the purpose for which the church was organized": Mack v. Kime, 129 Georgia 1. Though appellees contend that such an intention exists in the present instance, the history of the proceedings, as appearing in this record, fully convinces us that the intention of the unionists was, and the effect of the merger will be, to further the purpose for which each denomination was organized.

The real question, at this stage of the case, is, therefore, whether the plan of union was duly approved by the United Evangelical Church. Admittedly it was approved by every church organization of that denomination, except only the East Pennsylvania Annual Conference; and this brings us to the second branch of the objection, viz., Under the discipline of that church, must power be obtained, in the first instance, from the individual members of the church? No authority is produced for this contention, and we have found none. On the contrary, the plan of church government here involved being of the federated and not of the congregational type, it can make no difference how many oppose the merger, if it has been approved, in the way prescribed by the law of the church, by a sufficient proportion of the entire membership: Wallace v. Hughes, 131 Ky. 445.

On this latter point, appellees point us to paragraph 88 of the discipline of the United Evangelical Church, which provides that "The annual conference is possessed of all powers, legislative, judicial and administrative, which it has not surrendered to the general conference

by legislative enactment.  On the legality of its own organization, the judgment of its duly qualified members is final."  This paragraph is in the chapter relating to annual conferences, and must be interpreted in the light of that fact.    Thus considered, it is evident that the legislative, judicial and administrative powers possessed by each annual conference, cannot refer to such matters as appertain to the church at large, but only to those which relate to the particular annual conferences, else each such conference could legislate for the church generally, with or without the consent of the other annual conferences, and this might well result in "confusion worse confounded."  We need not pursue the subject farther, however, for we are clear that, under paragraph 97, the general conference had a controlling power over the subject-matter of this dispute.

It provides that "The General Conference......shall have power:  (1) To amend or revise the rules of temporal economy by a majority vote of all its members;  (2) To amend or revise any other part of the discipline by a three-fourths vote, provided such revision be first recommended or subsequently ratified by two-thirds of the members of all the annual conferences; provided, however, (a) That the articles of faith shall never be changed; (b) That the annual conferences shall never be deprived of the right to determine the legality of their own organization; (c) That the itinerant system shall never be abolished."

It is first contended that clause 2 above means that such ratification, to be effective, must be approved by two-thirds of the members of each of the annual conferences.    This is a possible construction, but we do not think it is the natural one.  Had "each" been meant, "each" should have been written.  It was not, however, and we have no right to substitute one word for another, when the effect will be to alter the plain meaning of the language actually employed, especially where, as here, the organization has decided that the "universal

custom" of the church has been against the construction claimed: Schlichter v. Keiter, 156 Pa. 119. It is conceded, since there was no provision on the subject, that only these actually voting need be considered, in determining whether or not a sufficient proportion has ratified (Schlichter v. Keiter, supra); and it is also conceded that, if the criterion is the total vote cast in *"all* the annual conferences," as distinguished from that cast in each of them, then the ratification was by more than "two-thirds of the members of all the annual conferences" voting on the subject. For the reason stated, we decide that this is the true construction of the clause under consideration.

It is next contended that the discipline of the united church changes the articles of faith, in violation of subclause (a) above, and hence the plan wholly fails. This was, perhaps, the most earnestly contested of all the points made by relators, yet, when considered from the proper standpoint, it is free from difficulty. The provision that "the articles of faith shall never be changed" must receive a reasonable interpretation. It has no applicability where there is "in such change no *radical* departure from the original faith or doctrine": Schnorr's Appeal, 67 Pa. 138, 146. "The provision was not intended as an impassable barrier thrown in the way of improvement of all sorts, but as a protection against the introduction of heretical doctrines, destructive of the distinctive theological character of the church": Schlichter v. Keiter, 156 Pa. 119, 124. Inerrancy of expression is not a human attribute, and this is clearly recognized by the United Evangelical Church itself. In the thirty-seven years between the time when it was formed by secession from the Evangelical Association and the date of the printing of the discipline before us, we are advised, in the introduction to it, that "radical changes have been made in the construction of the discipline": and in paragraph 23 we are told that the "polity, rules, rites and ceremonies [of the church] may

be lawfully changed from time to time, as the needs of men and the diversity of nations, countries and manners may require." Indeed such changes are inevitable. In Nagle v. Miller, 275 Pa. 157, 165, we said: "Differences of opinion are the natural result of moral, spiritual and social growth, and are unavoidable in every religious denomination. In the development of the human race, changes in spiritual matters must necessarily follow if the race is to continue to progress. The questions of doctrine and principles arising in religious denominations from time to time are for the determination of the members, through their duly appointed representatives, in the manner provided by church law, and the civil courts will not undertake to determine between one theory and another, so long as there appears no *serious* departure from the generally accepted teachings of the organization, coupled with an attempt to divert church property to a purpose radically different from that for which it was acquired."

The new discipline does not verbally agree with the old one, but we are not concerned with such changes; the real inquiry is, were those which were made of so substantial a character as "to utterly abandon the purpose for which the church was organized": Mack v. Kime, supra. Upon this point, distinguished theologians testified, some on one side and some on the other, each giving cogent reasons for the conclusion he reached. The court below held that at least some of the changes were substantial in character, and it is strongly urged that this should be conclusive on us, since the evidence was ample to support this view: Glenn v. Trees, 276 Pa. 165; Browne v. Hoekstra, 279 Pa. 418. We have no intention of varying that well-settled rule, but it has no applicability here. It has been many times decided that "whenever the questions of discipline, or of faith, or of ecclesiastical rule, custom or law, have been decided by the highest of those church judicatories to which the matter has been carried, the legal tribunals

must accept such decisions as final, and as binding on them, in their application to the case before them": Watson v. Jones, 13 Wallace 679; Wallace v. Hughes, 131 Ky. 445. "The decisions of ecclesiastical courts, like every other judicial tribunal, are final; as they are the best judges of what constitutes an offense against the word of God and the discipline of the church. Any other than those courts must be incompetent judges of matters of faith, discipline and doctrine; and civil courts, if they should be so unwise as to attempt to supervise their judgments on matters which come within their jurisdiction, would only involve themselves in a sea of uncertainty and doubt, which would do anything but improve either religion or good morals": German Reformed Church v. Comm. ex rel. Seibert, 3 Pa. 282, 291; Irvine v. Elliott, 206 Pa. 152, 154. Interference by the courts of law "will only be had when it is manifest that what the church tribunal has adjudicated is not a difference of opinion as to doctrines, or teachings, but an attempt, in the form of such adjudication, to utterly abandon the purposes for which the church was organized": Mack v. Kime, supra. No such attempt is disclosed by this record.

In the present instance, every church organization which has had the matter before it, has decided that the discipline of the united church discloses no substantial change in the articles of faith, from those set forth in the discipline of the United Evangelical Church. We yield a more ready assent to this conclusion when we read the latter discipline, for we find in it, in paragraph 102, that "our articles of faith......as accepted and maintained by the United Evangelical Church...... are in substantial harmony with that portion of the protestant christianity which advocates vital godliness, by actual experience and practice," as, without question, the united church, and its articles of faith, do.

What has been said disposes also of the contention that the clause forbidding the abolition of the itinerant

system, has been transferred to a less binding part of the discipline. Moreover, every one admits that it has not been abolished, and with that only are we now concerned.

Finally, so far as relates to this branch of the case, it is claimed that any other conclusion than that reached by the court below, would result in depriving the East Pennsylvania Annual Conference of the inalienable right, specified in sub-clause (b) above, "to determine the legality of [its] own organization." It is gravely doubtful whether that clause has any relation to the present situation, but, assuming that it has, appellees are not helped. We are not inquiring whether the East Pennsylvania Annual Conference was properly organized, but whether the merger has been legally effected. In fact, we have here two East Pennsylvania Annual Conferences, one admitting the validity of the merger and the other denying it. We may concede that both are legally organized, but one must be outside the pale. We decide that the old annual conference, bearing that name, is in that unfortunate situation.

The last objection is that the plan of merger is ineffective, because it attempts to transfer the old East Pennsylvania Annual Conference to the united church at another time than "in the month preceding the regular session of the annual conference." This provision has no applicability, however, to the present controversy. It appears twice in the discipline: (1) in paragraph 186, where it is specified as a requirement to be inserted in deeds for church and parsonage properties; and (2) in paragraph 187, where it is required to be set forth in charters of incorporation. In each case it is specified that the particular church "reserves to itself the right to dissolve this connection, and form any other denominational connection, or continue as an independent congregation," under certain conditions therein set forth, among them being one that the "congregational action......can be taken only during the thirty days

immediately preceding the opening date of the regular session of the annual conference" in which the particular church is located. The East Pennsylvania Annual Conference of the United Evangelical Church, which was incorporated, made no attempt to exercise the power thus conferred on it. . Had it successfully done so, it would no longer have had the right to elect the trustees of Albright College, since it would not then have been a congregation of the United Evangelical Church. Now that the union has been effected, the provisions referred to no longer exist for a congregation of the former United Evangelical Church, save to the extent, and subject to the limitations, appearing in the discipline of the united church, and with this we have nothing to do at the present time.

The judgment of the court below is reversed, and it is adjudged that the respondents, E. E. Stauffer, W. S. Harris, H. H. Zaring, D. S. Kistler, George H. Leininger, and B. F. Christ, and not the relators, were duly and lawfully elected trustees of Albright College.